## NORTHERN PAC. R. CO. v. HOGAN.

(Circuit Court of Appeals, Eighth Circuit. July 16, 1894.)

No. 357.

1. MASTER'S LIABILITY TO SERVANT—FELLOW SERVANTS—BRAKEMAN AND CONDUCTOR.

A brakeman and a conductor are fellow servants, within Comp. Laws N. D. 1887, § 3753, exempting an employer from liability to an employé for negligence of another person employed by him in the same general business.

2. SAME—STATE STATUTE—FOLLOWING CONSTRUCTION BY STATE COURT.
  The state having power to determine the liability of an employer. to an
  employé for injury sustained in his service, the construction put on its
  statute on the subject by its court of last resort will be followed by fed-
  eral courts.

In Error to the Circuit Court of the United States for the District
of Minnesota.

Action by Cornelius Hogan against the Northern Pacific Railroad
Company for injuries received in its employment as a brakeman.
Judgment for plaintiff. Defendant brings error. Reversed.

J. H. Mitchell, Jr., for plaintiff in error.
F. D. Larrabee, for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAY-
ER, District Judge.

THAYER, District Judge. The facts disclosed by the record in
this case, which was a suit for personal injuries, are substantially
as follows: Cornelius Hogan, the defendant in error, was a brake-
man, who had been in the service of the Northern Pacific Railroad
Company, the plaintiff in error, for about two years prior to May,
1892. At that time he was serving the company in the capacity
of head brakeman on a regular freight train running between James-
town and Fargo, in the state of North Dakota. This train usually
arrived in Jamestown from the west at about 7 o'clock in the even-
ing, and left shortly thereafter for Fargo; but on the occasion of
the accident, to wit, on the evening of May 10, 1892, it was an hour
or two late. It frequently happened that some car loads of live
stock had to be taken up and placed in the train at Jamestown,
and such was the case on the evening of May 10, 1892. It appears
from the testimony that, after the train in question arrived at
Jamestown from the west, the train crew, including Hogan, who
were to take charge of the same from that point east to Fargo, were
called, and proceeded with the discharge of their several duties in
the usual and ordinary manner. Hogan and the conductor of the
train took the numbers and seals of all the cars composing the
train, after which they went to the yardmaster's office, which was
some distance east of the forward or eastern end of the train.
After waiting there a few moments for orders and instructions,
they again went to the forward end of the train, with a view of
attaching the road engine thereto, which was then standing on an
adjoining side track. The road engine was let out onto the track
on which the freight train was standing, and was backed down
to within a few feet of the forward car, preparatory to being coupled
thereto when the train was made up and ready to start. At about
the same time, another engine, termed the "helper," was let out onto
the main track, by Hogan, and was sent back to the rear of the
standing freight train for the purpose of being attached thereto,
so as to help push the train out of the station on an ascending
grade. During these several occurrences, it seems that a party of
men were engaged at the rear or west end of the train in the act

of attaching three car loads of live stock thereto. A switch engine was being used for that purpose. It is an undisputed fact that owing to the length of the train, consisting, as it did, of about 30 cars, and owing to the darkness of the night, neither Hogan nor the conductor could see what progress this party of men had made with their work, nor in what part of the train they were placing or attempting to place the three cars of live stock; but they did know that these cars were to be placed in the train, and that a party of men were engaged in that service at the rear end of the train with a switch engine. Hogan testified that the conductor finally gave an order to couple the road engine to the outgoing train, saying at the same time, "Those three cars of stock have been put on the rear end of the train." The conductor testified that he said: "We will couple up now, so as to get ready to go. I think they are putting the stock on the rear end, on the hind end, of the train." In the act of making the coupling, pursuant to the order of the conductor, Hogan lost the thumb and forefinger of one of his hands, by their being crushed between the bumpers of the car and the engine. There was evidence tending to show that the standing train of freight cars was pushed forward about six or eight inches by the movement of one or the other of the engines at the rear end of the train, either the switch engine or the "helper," and that this unexpected movement of the train occasioned the injury of which the plaintiff complains. In the circuit court a judgment was rendered against the railroad company for $4,500, to reverse which it has brought the case to this court. The railroad company relies upon the following propositions to obtain a reversal of the judgment: First, that by virtue of a statute of the state of North Dakota, where the accident occurred, the railway company is not liable to Hogan for the negligent act of the conductor of the freight train, if, indeed, he was guilty of any negligence; and, second, that, upon the undisputed evidence in the case, the accident was due to one of the ordinary risks of the employment, and that the railway company was in no wise at fault.

The statute to which reference is thus made is section 3753 of the Compiled Laws of North Dakota for the year 1887, and is as follows:

"An employer is not bound to indemnify his employee for losses suffered by the latter in consequence of the ordinary risks of the business in which he is employed, nor in consequence of the negligence of another person employed by the same employer in the same general business, unless he has neglected to use ordinary care in the selection of the culpable employee."

It admits of no doubt, we think, that the interpretation placed upon that statute by the supreme court of North Dakota would absolve the railway company from liability, on the state of facts disclosed by the present record. In the case of Elliott v. Railroad Co., 41 N. W. 758, the supreme court of the then territory of Dakota held that a section foreman and a train conductor were coemployés in the same general business, within the meaning of the above statute; and in a late case, decided by the supreme court of North Dakota since its admission into the Union, it was held in an elabo-

rate opinion that a foreman of a gang of laborers, who had authority to hire and discharge the men composing the gang, and to control and direct them while at work, was also a coemployé of the various members of the gang, within the purview of such statute. Vide Ell v. Railroad Co., 48 N. W. 222. The court decided in substance, that whether two persons in the service of the same master are coemployés, and subject to the rule of liability declared by the aforesaid statute, depends not upon the relative rank of the two employés, nor upon the fact that one controls and directs the other, but upon the character of the work in the doing of which the negligent act is committed. The "superior servant doctrine," as it has sometimes been termed, was expressly disapproved in that case, as well as the decision of the supreme court of the United States in the case of Railway Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184. It was ruled, in effect, that, under the provisions of the Dakota statute, a master is not liable to one employé for the negligent act of another, unless the latter is at the time engaged in the performance of some duty that is personal to the master. There seems to be no valid ground, therefore, for dissenting from the view which is advocated by counsel for the plaintiff in error, that the statute of North Dakota, as construed by the highest court of that state, exempts the railroad company from liability for the injuries complained of, and that in the courts of that state the plaintiff below could not have recovered upon the state of facts proven at the trial.

It must also be regarded as a well-established doctrine that the states have the right to regulate the relations existing between employers and employés within their respective borders, and to determine by legislative enactment when and under what circumstances an employer shall be held liable to an employé for an injury sustained by the latter while in his service. So far as we are aware, laws of this description have always been treated as obligatory upon the federal courts to the same extent and with like limitations as other statutory enactments, even where they modify to some extent the pre-existing rules of the common law, and we can conceive of no sufficient reason why they should not have the same effect in the federal courts, as rules of decision, which is accorded to other state statutes. It was said on this subject in the case of Railroad Co. v. Baugh, 149 U. S. 368, 378, 13 Sup. Ct. 914, that "there is no question as to the power of the states to legislate and change the rules of the common law in this respect as in others." And in other cases, as well, it has been taken for granted that the states have ample power to regulate the relations existing between employers and employés as they may deem expedient. Hough v. Railway Co., 100 U. S. 213, 226; Railway Co. v. Prentice, 147 U. S. 101, 106, 13 Sup. Ct. 261; Railroad Co. v. Hambly, 14 Sup. Ct. 983. Indeed, it would lead to intolerable results, which will be readily apprehended, if the federal courts should either deny the authority of such statutes, or refuse to enforce them according to the interpretation placed thereon by the courts of the state, particularly by its court of last resort. We ought to say in this connection that it has not been expressly claimed by counsel for the defendant in

error that the statute of North Dakota now in question is not bind-
ing upon the federal courts, but such seems to us to be the necessary
result of the argument actually made. It is said that the statute
of Dakota is merely declaratory of the common law; that in con-
struing the statute the state court merely gave expression to its
views of the common law, and that the federal courts, being courts
of co-ordinate jurisdiction, are not bound by the decision of the
state court on questions of that character. The argument is in-
genious, but, as we think, it is fallacious. The state statute to
which reference has been made supersedes the common law in the
state where it was enacted, touching the subject to which it relates;
and, while it is true that the state court had occasion to refer to
the principles of the common law, yet it must be borne in mind that
such reference was made solely for the purpose of ascertaining the
intent of the lawmaker as evidenced by the statute in question. It
is the statute, however, and not the common law, which is now in
force in the state of North Dakota; and it is the statute, as con-
strued by the highest court of that state, which must determine the
rights of the parties and control the decision in the case at bar.
Any other view would render the statute inoperative and nugatory.

In what has thus far been said we have not been unmindful of the
observations made with reference to the Dakota statute in Railroad
Co. v. Herbert, 116 U. S. 642, 653, 6 Sup. Ct. 590. In that case the
court was dealing with the liability of an employer for an injury
sustained by an employé in consequence of defective machinery and
appliances. The court held that the statute did not exempt the
employer in such case, because whoever was appointed to provide
suitable machinery and appliances was discharging a personal
duty of the master, and, while, so acting, was the representative
of the master, and not a coemployé, within the purview of the
Dakota statute. The decision is accordingly in harmony with the
views of the state court in Ell v. Railroad Co., supra.

In conclusion, it is important to add that in a very recent case,
heretofore cited (Railroad Co. v. Hambly), which originated in
Dakota, the supreme court of the United States gave effect to the
same statute which is now under consideration, holding that, by
virtue of its provisions, a person employed in keeping the track of
a railroad in repair was a coemployé of the engineer and conductor
of a passenger train on the same road, through whose negligence he
had sustained injuries. At the time the last-mentioned suit was
instituted, the Dakotas had not been admitted into the Union, and
the decision of the territorial supreme court construing the statute
in question was said to be merely persuasive authority. It was
conceded, however, that the interpretation given to the statute by
the highest court of the state after its admission into the Union
would, as a matter of course, be adopted and applied by the federal
courts, pursuant to the requirements of section 721, Rev. St. U. S.

Our conclusion is, therefore, that the first contention of the plain-
tiff in error, heretofore stated, should have been sustained by the
circuit court, and that the declaration of law embodying that con-
tention should have been given, and that the jury should have been

directed to return a verdict in favor of the defendant. For the error committed in refusing the instruction and refusing to direct a verdict in favor of the company, the judgment is reversed, and the cause is remanded, with directions to award a new trial.