## WESTERN UNION TEL. CO. v MORRIS.

(Circuit Court of Appeals, Eighth Circuit. November 14, 1900.)

### No. 1,406.

1. TRIAL—INSTRUCTIONS EMBODIED IN GENERAL CHARGE.

It is not error for a trial court to refuse to give instructions to the jury in the language of counsel, where the substance of these instructions is embodied in its general charge to the jury.

2. SAME.

Where a general charge correctly states the law of a case, but does not eliminate and set forth the crucial issues which the jury is to determine, or specifically apply the law to those issues, either party is entitled, upon request, to additional instructions from the court which clearly and tersely state to the jury the very issues which they must determine from the evidence, and the law specifically applicable to those issues.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Kansas.

Clifford Histed and W. H. Rossington (George H. Fearons and Charles Blood Smith, on the brief), for plaintiff in error.

S. B. Isenhart, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. The defendant in error, Daisy E. Morris, sued the plaintiff in error, the Western Union Telegraph Company, for damages caused by its negligence in transmitting a telegram, and recovered a verdict and judgment for $4,500 and costs, which are challenged by this writ of error.

The material facts on which this judgment rests are these: In

105 F.—4

February and March, 1892, the defendant in error suffered from an attack of peritonitis. She recovered from this disease, and became so well that for many months before December, 1895, she performed the labor and discharged the duties of the wife of a farmer whose family consisted of himself, his wife, one or two children, and some hired men. Nevertheless, the attack of peritonitis from which she had suffered in 1892 had left her ovaries and fallopian tubes in such a diseased condition that there was greater liability to a recurrence of peritonitis than there had been before that attack. On December 4, 1895, she suffered from a severe pain in the head and shoulder, and her husband caused the operator of the plaintiff in error at Hoyt, in the state of Kansas, where she lived, to be informed that she was seriously ill, and to receive a telegram to be sent to Dr. Dawson at North Topeka, in the state of Kansas, summoning him to the bedside of the defendant in error on the first train on the morning of December 5, 1895. This telegram was delivered to the operator at about 7 o'clock in the evening of December 4th. It read: "Dr. Dosen: Come on the morning train, and not fail. Ans. I will meet you. Frank Morris, Hoyt, Kas." When this telegram was delivered to Dr. Dawson by the telegraph company at about 9 o'clock on that evening, it read: "Dr. A. Dawson, North Topeka, Kas.: Come on morning train without answer. Fronk." The result was that the doctor did not know that the telegram was from Frank Morris, and did not go to Hoyt until he received another telegram from Morris in the forenoon of the next day, so that his arrival at the residence of Mrs. Morris was in the afternoon of December 5th, and about nine hours later than it would have been if the first telegram had been correctly transmitted and delivered. Meanwhile the illness of Mrs. Morris had developed into general peritonitis, which caused her great pain, and resulted in suppuration and the formation of pus. Within an hour after his arrival, Dr. Dawson relieved her of the severe pain, and he testifies that, if he had arrived at the inception of the peritonitis, he could and would have relieved her at once, and have prevented the suppuration and formation of pus. During December 5th, and before Dr. Dawson arrived, another physician was in attendance upon Mrs. Morris. After receiving the treatment of Dr. Dawson, Mrs. Morris recovered from the attack of peritonitis to such an extent that she could sit up, and could walk a short distance, but she was not able to resume her work as a housewife, and on December 26, 27, and 28, 1895, her symptoms became so alarming that her physicians decided that a surgical operation was necessary to save her life. They performed this operation on December 29, 1895. They opened her abdomen, and found on one side a sack made up of the fallopian tube, the remnants of the ovary, and seven or eight ounces of pus; while on the other side the ovary was buried in adhesions, and the fallopian tube was diseased. This condition of the ovaries and of the fallopian tubes indicated that the abnormal adhesions in which they were involved were not the result of the attack of peritonitis in December, 1895, but that they must have been caused by the attack of 1892. The condition in which these parts were found showed that the fallopian tubes must

have been infected with germs of disease ever after that earlier attack, which, although they lay dormant from 1892 to 1895, were liable at any time to cause inflammation and peritonitis; and that after 1892 there was no other way than by means of a surgical operation whereby the defendant in error could be cured of this diseased condition. In this state of the facts there was a spirited contest at the trial over the question whether the attack of peritonitis in 1895 was the cause or the effect of the diseased condition of the ovaries and the fallopian tubes.

The part of the charge of the court which is material to the questions now to be considered reads in this way:

"On the part of the defendant it is claimed that the evidence shows that during the nine-hours delay between the time that Mr. Dawson might have arrived and the time that he did arrive Mrs. Morris was resting easily, and was asleep part of the time, due to the ministration of the local doctor, and that she suffered no more pain during that period than she would probably have suffered if Dr. Dawson had arrived on the morning of the 5th; that the suppuration or diseased condition which made it necessary to remove her ovaries and fallopian tubes was not the result of the peritonitis, but was the efficient cause thereof. In other words, it is contended by the plaintiff that the diseased condition of those organs of her body was the direct and proximate result of the peritonitis, while it is claimed by the defendant that the peritonitis was the direct and proximate result of the diseased condition of those organs: so that you will see that counsel are arguing from different standpoints, and have been during the entire progress of their arguments. * * * It is incumbent on the plaintiff to prove three things by a preponderance of the evidence: First. That the defendant was negligent in the transmission of the telegram. * * * Second. Had the message been correctly transmitted and delivered, would Dr. Dawson have gone on the first train to the bedside of Mrs. Morris? You have heard the evidence as to that. Third. Did his failure to go, caused by the incorrect transmission of the telegram, produce any injuries to the plaintiff which were the direct and proximate results of such delay? A proximate cause is one which, in a natural and continuous sequence, produces a condition or result complained of which would not exist were it not for that cause. In other words, as applied to this case, did the delay mentioned, if it were caused by the negligence of the defendant, naturally and probably cause the plaintiff any pain or injury which ought to have been foreseen in the light of the attendant circumstances? The plaintiff cannot recover for any pain or injury unless it be the proximate and natural result of the negligence of the defendant company. Anything that is reasonably ascribable to other causes than the negligence of the defendant will not afford plaintiff a cause of action. If you believe, from a fair preponderance of the evidence, that the defendant was negligent in transmitting the telegram for a physician, and that the defendant at the time was advised of the importance and urgent need of a physician; that the physician would reasonably have come in time had it been received by him, and that he was directly delayed in coming by reason of the defendant's error in transmitting it; and that the plaintiff directly and proximately, by such negligence and delay, and without contributory negligence on her part, suffered injury in the disease taking a more serious turn, requiring an operation to be performed on her, and causing her ill health; and that, if the physician had arrived at an earlier time in response to the telegram, had it been sent and delivered in reasonable time, and correctly so, such serious turn of the disease, the operation, and subsequent ill health of the plaintiff would have been prevented,—in such case the plaintiff would be entitled to recover of the defendant such sum as, in your best judgment and soundest discretion, will fairly and reasonably compensate her for such injuries as she may have alleged in her petition, and as the preponderance of the testimony fairly proves to have been brought about and produced directly through and because of the defendant's negligence in sending such telegram and the consequent delay in obtaining the physician."

The plaintiff in error requested the court to charge the jury that, even on the defendant in error's theory of the case, she was not entitled to recover any damages on account of the surgical operation if she became sick with peritonitis on December 4, 1895. The court refused this request, and gave no equivalent instruction. The testimony was full and undisputed that, if the physician failed to reach the patient within nine hours after the inception of the peritonitis, his arrival would have been too late to have prevented the suppuration which necessitated the surgical operation. Dr. Dawson, the expert of the defendant in error, himself testified that, so far as suppuration was concerned, it would make no material difference whether the physician was delayed nine hours or twice nine hours after the inception of the acute peritonitis, and there was no evidence to the contrary. It inevitably followed from the fact thus established that, if the commencement of the peritonitis was on December 4, 1895, the delay which caused the suppuration and the operation was the failure of the defendant in error to secure the attendance of a physician on that day, and not the failure of the telegraph company 'to correctly transmit the summons for a doctor to come on the morning of the next day. There was substantial testimony from which the jury might well have inferred that the inception of the peritonitis was on the 4th day of December, 1895. The husband of the defendant in error testified that on the evening before that day he told the telegraph operator that his wife was sick, and that he was thinking of sending for a doctor. The boy who was living with Mrs. Morris, and who took the message from her residence to the operator on the evening of December, 4th, told the latter that she was very sick, and that they did not expect her to live. The sister of Mrs. Morris testified that she was at the latter's residence between 5 and 6, probably later, in the evening of December 4th, and that Mrs. Morris was in bed, and that she thinks they were putting hot applications upon her. In view of this testimony the instruction requested by the counsel for the telegraph company was a correct statement of the law applicable to the case, and there was ample evidence to warrant its submission.

The plaintiff in error also requested the court to charge the jury: (1) That if the condition of the organs of the defendant in error was such when the message was sent that their removal was necessary, and could not have been prevented if Dr. Dawson had arrived when he was summoned, the defendant in error was not entitled to recover any damages on account of the surgical operation; (2) that the defendant in error was entitled to recover for such aggravation of her physical pain and suffering as was caused by the delay of the doctor which resulted from the failure to properly transmit the telegram, but that she could not recover for the pain which she would have suffered if he had not been so delayed; and (3) that, if the defendant in error procured the services of another physician, who so attended her during the delay in the arrival of Dr. Dawson that she suffered no more at any time than she would have suffered, and was in no worse condition when Dr. Dawson arrived than she would have been if he had promptly responded to the first call, then the

plaintiff in error was entitled to their verdict. The court refused to give either of these instructions, and each of its refusals is assigned as error. These requests present correct statements of the law which were applicable to the evidence in the case. In support of the rulings of the court counsel for the defendant in error invoke the rule that it is not erroneous for the trial court to refuse to give instructions to the jury in the language of the attorneys when the substance of the instructions is embodied in the general charge of the court. The soundness of this rule is conceded, but its applicability to this case is not admitted. It may be that the substance of some of the requests can be deduced from the general charge of the court by a careful and painstaking process of reasoning. Thus it may be said that the court charged that the defendant in error could not recover for anything which she did not prove by a fair preponderance of evidence to be the natural and probable result of the negligence of the plaintiff in error in transmitting the telegram, but that if they believed, from a fair preponderance of the evidence, that the plaintiff in error "directly and proximately, by such negligence and delay, suffered injury in the disease taking a more serious turn, requiring an operation to be performed upon her," she could recover such damages as were directly and proximately caused by such negligence and delay; and that, in effect, this was to say that she could not recover damages on account of the surgical operation if her organs were so diseased when the message was sent that their removal could not have been prevented, and that she could not recover for any pain which she would have suffered if the message had been properly transmitted, because in such a state of facts the surgical operation and the pain would not be the natural and probable result of the failure to properly transmit the message. But this conclusion is a deduction from a careful study of the written charge and an extended process of reasoning. The jury had no opportunity to study this charge in this way. They did not read it at all, and heard it but once. It is plain that it did not as clearly present to those who heard it the real issues as did the requests for instructions which formulated them. A single delivery or reading of this general charge probably would not at once present to the minds of all who heard it the crucial questions in this case, while the submission of the instructions requested which clearly stated those issues and applied the law to them would have been sure to do so. Moreover, the argument that these issues are, in substance, presented in the general charge on the law of proximate cause, proves too much. It is equally cogent to present the proposition that a general statement that damages caused to a plaintiff by the negligence of a defendant may be recovered covers in substance all the legal questions which arise in an action for negligence. General charges of this character often fail to present to the minds of those who hear them but once, and have no opportunity to carefully read and study them, the actual issues which they are to decide. A plain statement of the actual issues left for the jury to decide at the conclusion of the evidence, and an application of the law to those very issues in the charge or the instructions of the court, is more helpful

to the jury, and far more conducive to the administration of justice, than an abstract statement of the legal propositions which govern the case.

The counsel for the plaintiff in error requested the court to give to the jury instructions which tersely and fairly presented the crucial questions in this case to the jury. The general charge did not so submit them, but left the jury to eliminate them from the mass of evidence and argument, to apply a general statement of the law of probable cause to them, and then to decide them. In this state of the case, we are not persuaded that the substance of the instructions requested by counsel for the plaintiff in error can fairly be said to be embodied in this general charge. There is no statement whatever in it that the defendant in error could not recover on account of the surgical operation, even on her theory of the case, if she became sick with peritonitis on December 4, 1895, and there is nothing in the charge equivalent to that statement. There is no plain instruction in the charge, either, that, if the condition of the organs of the defendant in error was such when the message was sent that their removal could not have been prevented if Dr. Dawson had arrived when he was summoned, she could not recover on account of the consequences of the operation, or that she could recover for the aggravation of pain caused by the delay of the doctor which resulted from the failure to transmit the telegram only, and that she could not recover for the pain which she would have suffered if he had not been delayed, or that, if she procured the services of another physician, who so attended her during the delay in the arrival of Dr. Dawson that she suffered no more at any time, and was in no worse condition when Dr. Dawson arrived, than she would have been if he had promptly responded to the first call, she was not entitled to a verdict. The instructions which embodied these statements present the real questions which it was the duty of the jury to decide in this case, and the plaintiff in error was entitled to have them tersely and clearly submitted to the jury by the court. A general charge which correctly states the law of a case, but does not eliminate and state the crucial issues in it which the jury is called upon to determine, may not be subject to exception. But, upon request, either party is entitled to additional instructions from the court which tersely and clearly state the crucial issues which the jury must determine from the evidence, together with the law applicable to those very issues. The instructions requested did this, and the charge did not do it. The requests for their submission to the jury should have been granted. The Encyclopædia of Pleading and Practice states the rule upon this subject in these words:

"Thus it is erroneous to refuse an instruction applying a principle of law to the facts in the case, even though the same principle be stated abstractly in other instructions. It is better practice to charge the law as applied to the respective theories contended for than to announce principles in the abstract. So it is erroneous to refuse a request where the charge given does not state the requested point in clear and unmistakable language, and where the language of the request will be more readily understood by the jury." 11 Enc. Pl. & Prac. 298, 299; Muldowney v. Railroad Co., 39 Iowa, 615, 619, 620; Parkhill v. Town of Brighton, 61 Iowa, 103, 108, 15 N. W. 853; Devitt v. Railroad Co.,

50 Mo. 302, 305; Aldrige v. State, 59 Miss. 250, 257; Lamar v. State, 64 Miss. 428, 430, 1 South. 354; Gerdine v. State, 64 Miss. 798, 801, 2 South. 313; Thompson v. Thompson, 77 Ga. 692, 698; Railway Co. v. Johnson, 90 Ga. 500, 16 S. E. 49.

In Railway Co. v. Johnson, supra, it was held that a specific charge, which was legal, and adjusted to a distinct matter in issue involving the right of the plaintiff to recover, and which might materially aid the jury, should have been given as requested, although in principle, and in more general and abstract terms, it might be covered by other instructions given by the court. In Thompson v. Thompson, supra, the supreme court of Georgia said:

"Where several distinct matters involving diligence are presented to the jury, while it is proper to charge a general principle applicable to them all, yet if a specific charge, which is legal, apt, and precisely adjusted to one of them, be requested, it is proper to give the latter also, if it would materially aid the jury in applying the general principle to this one of the several matters for their consideration. Now, law is not only to be submitted to the jury, but it is to be applied by them; and where its application is materially aided by a specific request, there seems as much reason to give that request as to give the principle; and, looking to the evidence in this case, we have no doubt that the request was a proper one. It was bringing the general principle down to this specific instance, and the jury would have been helped materially by having the very words of this request delivered to them as a part of the charge of the court."

And that court reversed the judgment below for the failure to give the specific instruction.

On account of the refusal of the circuit court to submit to the jury the requested instructions which have been discussed, the judgment below must be reversed, and the case must be remanded to that court, with instructions to grant a new trial. It is so ordered.

THAYER, Circuit Judge. I agree to the reversal of the judgment of the trial court, but not upon the grounds stated in the foregoing opinion, from which both Judge CALDWELL and myself dissent. After a careful perusal of the testimony as contained in the present record, I have reached the conclusion that there was no substantial evidence tending to show that the surgical operation of which the plaintiff below complained was occasioned by the defendant company's neglect to transmit the telegram of December 4, 1895, correctly. On the facts disclosed by this record there is no reasonable ground for the contention that the negligence complained of was the proximate or efficient cause of the operation. For that reason I am of opinion that the trial court should have instructed the jury, as it was requested to do, that the plaintiff was not entitled to recover "for any damages resulting from the surgical operation, or any consequences flowing therefrom"; and that the recovery should have been limited to compensation for such increased pain and suffering as the plaintiff below may have sustained by reason of not receiving proper surgical attention at the proper time, owing to the mistake made in transmitting the message. The charge by the learned judge of the trial court, in my judgment, sufficiently advised the jury that there could be no recovery on account of the surgical operation, if the condition of the plaintiff's organs was

such when the message was sent that their removal was necessary, and could not have been prevented if Dr. Dawson had arrived on the morning of December 5th, when he was summoned. It also clearly advised the jury that she could not recover for pain which she would have suffered even if Dr. Dawson had not been delayed by the mistake made in transmitting the message. I think that both of these propositions were clearly embraced in the charge in chief, and that no error was committed in refusing the special requests in which those propositions were embraced, and, in substance, reiterated. It is a well-settled doctrine in the federal courts that error cannot be successfully assigned because of the refusal to give special instructions the substance of which is embraced in the charge in chief. Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Railroad Co. v. Winter's Adm'r, 143 U. S. 60, 12 Sup. Ct. 356, 36 L. Ed. 71; Railroad Co. v. McDade, 135 U. S. 554, 10 Sup. Ct. 1044, 34 L. Ed. 235; Ormsby v. Webb, 134 U. S. 47, 10 Sup. Ct. 478, 33 L. Ed. 805; Anthony v. Railroad Co., 132 U. S. 172, 10 Sup. Ct. 53, 33 L. Ed. 301. The rule in question tends to shorten litigation. It frequently avoids the necessity of giving a multitude of special instructions, which would confuse, rather than enlighten, a jury; and it should be upheld. I do not assent to the foregoing opinion, therefore, in so far as anything therein contained may tend to weaken or impair the force and effect of the doctrine in question. I am authorized to state that Judge CALDWELL concurs with me in the views last stated, and that he also concurs in the view first expressed, that the present record does not contain substantial evidence warranting the submission to the jury of the issue whether the mistake made in transmitting the telegram was the proximate cause of the operation.