SOUTHERN PAC. CO. v. SCHOER.

(Circuit Court of Appeals, Eighth Circuit. March 24, 1902.)

No. 1,566.

1. MASTER AND SERVANT—NEGLIGENCE—STATES MAY REGULATE LIABILITY FOR.
    The states have the right to regulate within reasonable limits the relations between employers and employés within their borders, and to fix by legislative enactments the liabilities of the former for the acts and negligence of the latter.

**2. Negligence of Superior Servants—Liability under Utah Statute.**

Sections 1342 and 1343 of the Revised Statutes of Utah make all servants employed in the service of a master doing business in that state, who are intrusted by him with authority to command his other servants, or with the authority to direct another of his servants in the discharge of his duties, vice principals of their master, and charge him with liability for their negligence whether it was committed in the discharge of the positive duties of the master or in the performance of the primary duties of the servants.

**3. Same—Acts not Done while Exercising Superintendence.**

Those sections make the master liable for the negligence of superior servants committed in the discharge of their duties as employés, whether the negligence was committed while they were exercising their authority to command or superintend others or not.

**4. Evidence—Writings.**

A writing which contains competent evidence upon a material issue cannot be lawfully rejected because it also contains evidence which is incompetent and irrelevant.

**5. Act of God Excusing Performance of Duty.**

Nothing less than such a fortuitous gathering of circumstances as prevents the performance of a duty, and such as could not have been foreseen by the exercise of reasonable prudence, or overcome by the exercise of reasonable care and diligence, constitutes an act of God which will excuse the discharge of a duty.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Utah.

Thomas T. Fauntleroy (Cornelius H. Fauntleroy, on the brief), for plaintiff in error.

W. L. Maginnis (A. J. Weber, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. Between 1 and 2 o'clock on the dark and foggy morning of December 20, 1899, the second section of a passenger train of the Southern Pacific Company, upon which H. A. Schoer was a fireman, ran into the rear of the first section near the yard limits of the company at Terrace, in the state of Utah, threw this fireman against the boiler of the engine, and fastened him there under a mass of coal which was thrown from the tender by the shock of the collision, until he was so scalded by steam that escaped on account of the breaking of the water gauge that he died. C. Schoer, the administrator of his estate, brought an action against this company for alleged negligence causing his death, and obtained a verdict and judgment which this writ of error has been sued out to review.

The main complaint of the company is that the court below charged the jury that under the statutes of the state of Utah the engineer of the locomotive on which the deceased was a fireman was the representative of the company, and that his negligence, if any, in following the first section of the train too closely, and in running his engine too rapidly as he approached the yard limits at Terrace at the time of the collision, was the negligence of the company. The sections of the statute of Utah which induced this instruction are:

"1342. All persons engaged in the service of any person, firm or corporation, foreign or domestic, doing business in this state, who are intrusted by

such person, firm, or corporation as employer with the authority of superintendence, control, or command of other persons in the employ or service of such employer, or with the authority to direct any other employee in the performance of any duties of such employee, are vice-principals of such employer and are not fellow servants.

"1343. All persons who are engaged in the service of such employer, and who, while so engaged, are in the same grade of service and are working together at the same time and place and to a common purpose, neither of such persons being intrusted by such employer with any superintendence or control over his fellow employees, are fellow servants with each other; provided, that nothing herein contained shall be so construed as to make the employees of such employer fellow servants with other employees engaged in any other department of service of such employer. Employees who do not come within the provisions of this section shall not be considered fellow servants."

Rev. St. Utah, 1898.

It is not denied that the engineer in charge of the engine upon which the deceased was employed at the time of his death was intrusted by the company with authority to superintend and direct him in the performance of his duties, but it is contended that this master was not responsible for his negligence, because the negligence which caused the injury was committed while this engineer was discharging the primary duty of a servant, and was not engaged in performing one of the positive duties of the master, and because this negligence was committed while he was not exercising his authority to superintend the action of the fireman or to direct him in the performance of any of his duties.

The argument in support of the first contention is: Under the general law the master was not liable for the negligence of this engineer, because he was discharging one of the primary duties of the servant, and was not performing one of the positive duties of the master, when he committed the fatal acts of negligence. The purpose and effect of the sections of the statute of Utah which have been cited were not to change or to extend the liabilities of masters for the negligence of their servants, but their sole object and effect were to give an authoritative legislative definition of the terms "vice principal" and "fellow servant," and to leave the liabilities of the masters for the acts of their servants as they were before these sections were enacted. Therefore, since the Southern Pacific Company would not have been liable for the negligence of this engineer under the general law, it is not liable for it under this statute. The truth of the major premise of this syllogism is conceded. In the absence of a statute the liability of a master for the negligence of his servant is a question of general law, upon which the decisions of the state courts are not controlling upon the federal judiciary, and, unless the negligent servant is the general manager or general superintendent of the business of the master, it is not his grade, rank, or authority over other employés, but it is the nature of the duty he is discharging when he is guilty of the negligence, that determines whether he is a vice principal or a fellow servant, and when the master is liable or is exempt from liability for the injury caused by his carelessness. If he is discharging one of the absolute duties of the master, the latter is liable for his acts and for his negligence. But, if he is discharging one of the primary duties of the servants, his

employer is exempt from liability.  Railroad Co. **v.** Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Railroad Co. v. Conroy, 175 U. S. 323, 327, 20 Sup. Ct. 85, 44 L. Ed. 181; City of Minneapolis v. Lundin, 58 Fed. 525, 527, 7 C. C. A. 344; Coal Co. v. Johnson, 56 Fed. 810, 6 C. C. A. 148.  The construction and maintenance of a railroad is the business of the master.  Its operation is the business of his servants.  The failure to exercise reasonable care in construction and maintenance is the negligence of the master.  The failure to exercise such care in the operation of a railroad is the negligence of the servant for which the master is not liable.  The alleged negligence of the engineer of the second section of this train in running his engine too close to the preceding section, and too rapidly as he approached the yard limits at Terrace, was negligence in the operation of the railroad, for which the Southern Pacific Company was not liable, in the absence of a statute which changed the rules and principles of the general law.  Railroad Co. v. Needham, 63 Fed. 107, 109, 11 C. C. A. 56, 58, 25 L. R. A. 833; Railroad Co. v. Mase's Adm'x, 63 Fed. 114, 115, 11 C. C. A. 63; Brady v. Railway Co. (C. C. A.) 114 Fed. 100.  These principles and authorities amply sustain the first proposition of counsel for the plaintiff in error.

But the correctness of the second premise of their syllogism is not so obvious.  A vice principal is the representative of the master, for whose acts and negligence the master is responsible.  City of Minneapolis v. Lundin, 58 Fed. 525, 527, 7 C. C. A. 344.  The rule that the master is liable for the negligence committed by a servant while he is discharging one of the positive duties of the master, and that he is not liable for his negligence when he is performing one of the primary duties of a servant, was not adopted to measure the liability of the master for the acts of a vice principal.  It was established to determine who were and who were not vice principals.  The master has been invariably held liable by all the courts for the acts and for the negligence of his vice principals.  The question upon which they have disagreed—the question which has occasioned debate—has been who were vice principals.  Under the general law in the federal courts and in many of the state courts that question has been answered by the rule which has already been stated, based upon the nature of the duty the servant was discharging when the negligence was committed.  In this condition of the law and of the decisions the legislature of the state of Utah enacted the statute which has been quoted.  It declares that employés who are intrusted by their employers with the authority to superintend other employés of the same master, or with the authority to direct any other employé in the discharge of any of his duties, are vice principals of such employer.  This declaration is a plain departure from the general rule of law which we have been considering; an unequivocal declaration that servants who have the authority to direct and superintend other servants are vice principals of their masters, whether they are engaged in discharging the duties of their employers or the duties of their servants.  There is no ambiguity in the terms, no uncertainty in the meaning of this statute, and no possible doubt of the purpose of the legislature in enacting it.  It is too positive to be dis-

regarded, too plain for construction, and its manifest legal effect cannot be ignored. To sustain the position of counsel for the plaintiff in error that this clear and authoritative declaration of the relation of superior servants to their masters in the state of Utah did not modify or extend the liability of the master beyond that fixed by the general law would be to defeat the manifest object of the legislature in passing this act, and to arbitrarily strike down a law which that body had the undoubted right to enact and to enforce; for the unquestioned rule is that the states have the right to regulate within reasonable limits the relations between employers and employés within their borders, and to fix by legislative enactments the liabilities of the former for the acts and the negligence of the latter. Railroad Co. v. Baugh, 149 U. S. 368, 378, 13 Sup. Ct. 914, 37 L. Ed. 772; Railroad Co. v. Hogan, 63 Fed. 102, 105, 11 C. C. A. 51. Our conclusion is that sections 1342 and 1343 of the Revised Statutes of Utah of 1898 make all servants employed in the service of a master doing business in that state, who are intrusted by him with authority to command his other servants, or with the authority to direct another of his servants in the discharge of his duties, vice principals of their master, and charge him with liability for their negligence, whether it was committed in the discharge of the positive duties of the master or in the performance of the primary duties of the servants.

Another reason why counsel for the plaintiff in error insist that the Southern Pacific Company is not liable for the negligence of this engineer is that when he committed the acts of negligence charged he was not engaged in exercising his authority to superintend the fireman, or his power to direct the performance of any of his duties. It is earnestly contended that it is only when the superior servant is guilty of negligence while he is actually engaged in exercising his authority of superintendence and control over those subject to his direction that his master is liable for his negligence under the provisions of this statute. In support of this position Shaffers v. Navigation Co., 10 Q. B. Div. 356, 357; Fitzgerald v. Railroad Co., 156 Mass. 293, 31 N. E. 7; Brittain v. Railway Co., 168 Mass. 10, 46 N. E. 111, and Dantzler v. Iron Co., 101 Ala. 309, 14 South. 10, 22 L. R. A. 361, have been cited, and these cases adopt and enforce the rule for which counsel contend. But they enforce it because the limitation which counsel seek to read into the statute of Utah was written into the statutes these decisions were interpreting by the legislative bodies which enacted them. The employers' liability act of 1880 (43 & 44 Vict. c. 42) § 1, subsec. 2, which the opinion in the Shaffers Case was construing, charges the master with liability for injuries caused "by reason of the negligence of a person in the service of the defendants who had superintendence intrusted to him whilst in the exercise of such superintendence." The Alabama and Massachusetts statutes under which the cases from those states arose contain a like limitation. Dantzler v. Iron Co., 101 Ala. 318, 14 South. 10, 22 L. R. A. 361, St. Mass. 1887, c. 270, § 1, subsec. 2. The statute of Utah under which this case arose contains no such limitation, and no indication that the legislature intended to adopt any such restriction. On the other hand, it plainly

declares that all persons intrusted by the master with the authority of superintendence of other persons in his employ are vice principals, and are not fellow servants. This is a declaration that they are vice principals not only when they are engaged in performing acts of superintendence and control, but at all times when the authority of superintendence and control is vested in them, and they are engaged in discharging their duties as servants of their master. This statute is so plain that it cannot be lawfully construed. To write into it the limitation suggested by counsel and found in the laws of England, Alabama, and Massachusetts would be to so amend it as to deprive it of the greater portion of its effect, in violation of its terms, and of the intention of the legislature which its words clearly disclose. It would be judicial legislation, which it is not the province of the courts to enact.

In their brief in reply counsel for the company suggest a third reason why, in their opinion, the Southern Pacific Company was not liable for the negligence of this engineer. It is that this company pleaded in its answer that the night was so dark and foggy that the proximity of the first section of the train could not be discovered by employés on the engine of the second section in time to stop the latter. But, if the night was so dark and foggy that this engineer could not discover the first section in time to stop his engine, reasonable care and prudence on his part demanded that he should either send forward his fireman as he approached the yard limits at Terrace to ascertain its location, or should run his engine so slowly and carefully that he could stop at any moment, and could surely avoid a collision. The complaint of the plaintiff did not estop him from a recovery for the negligence of this engineer which the evidence at the trial established. The result is that there was no error in the charge of the court that the engineer upon the second section of this train was the representative of the company, and that, if his negligence in operating his engine caused the injury, the company was liable to the plaintiff for the damages that resulted. Dryburg v. Milling Co., 18 Utah, 410, 412, 55 Pac. 367; Railway Co. v. Calvert (Tex. Civ. App.) 32 S. W. 246, 247; Railway Co. v. McDonald (Tex. Civ. App.) 31 S. W. 72; Railway Co. v. Wrenn (Tex. Civ. App.) 50 S. W. 210.

It is assigned as error that the train sheet of the railroad company, which disclosed the times when the two sections of the train which collided left the various stations of Toana, Montello, Tacoma, Gartney, and Lucin before they arrived at Terrace, and which also disclosed the time of the collision at Terrace, was admitted in evidence over the objection of counsel for the company. An examination of the record, however, discloses the fact that the only objection to this train sheet was leveled at the entries thereon of the times when the two sections arrived at Terrace. No objection whatever was made to the introduction of the train sheet for the purpose of showing the movements of the sections of the train before they reached Terrace, or to the train sheet as a whole; and the train sheet disclosed the times when the sections left all the stations mentioned above before they arrived at Terrace. It was tacitly conceded that for the purpose of showing everything which appeared upon this sheet except the time of the ar-

rival of these sections at Terrace it was admissible evidence. Conceding, without deciding, that the entries upon the train sheet of the times of the arrival of the two sections at Terrace and of the time of the collision were not competent testimony of those facts, the train sheet was still admissible, and the objection of counsel was properly overruled. If the train sheet contained any evidence competent and material to the issue, it could not be lawfully rejected; and it was tacitly conceded that the entries of the times when the sections of the train left the preceding stations were competent evidence of those facts, for no objection was made to these entries, and no objection was interposed to the train sheet as a whole. Since a portion of the train sheet was competent evidence, the objection to its introduction could not be sustained, and the proper remedy of counsel for the company was to request the court to instruct the jury at the time of its introduction or at the close of the case that it must not be considered as evidence of the time of the collision, or of the times of the arrival of the two sections at Terrace. No such request was made and there was no error in the ruling of the court upon this subject.

The next objection to the trial of this case is that the court refused to instruct the jury that, if the death of the deceased was proximately caused by a sudden and unusual fog, and without fault or negligence of the defendant, their verdict must be for the company. The court clearly and emphatically instructed the jury that there could be no recovery in this case, and that their verdict must be for the defendant, unless they were satisfied by a reasonable preponderance of the evidence that the death of the fireman was caused by its negligence. There was evidence at the trial that the night was dark and foggy, that it was difficult to distinguish objects at any considerable distance, and that the headlight of the second section of the train was not perceived until it was very near to the employés upon the first section. But there was nothing in all this, or in any of the evidence in the case, to warrant an instruction to the jury that they might find that this collision was caused by an act of God; and nothing less than an act of God would relieve the defendant from the duty of exercising reasonable care in the operation of these trains. The foundation of the rule that the act of God excuses the failure to discharge a duty is the maxim, "Lex neminem cogit ad impossibilia." If, by the use of reasonable care, prudence, and diligence under the circumstances of a particular case, it is possible to discharge the duty, then those circumstances do not constitute a valid excuse for a failure to perform it. Nothing less than such a fortuitous gathering of circumstances preventing the performance of a duty as could not have been foreseen or overcome by the exercise of reasonable prudence, care, and diligence constitutes an act of God which will excuse the discharge of the duty. The record discloses no such circumstances. The night was dark and foggy. This condition of the atmosphere imposed upon the operators greater watchfulness and care to prevent collisions and the duty of driving their engines with less speed and more caution. But there was nothing in the foggy air or in the darkness of the night which would have prevented them from safely operating their trains if they had exercised a care, watchfulness, and diligence proportionate

to the situation and the circumstances in which they were placed. In other words, it was not impossible to operate these trains safely by the use of reasonable care; and in this state of the case there was no error in the refusal of the court to submit to the jury the question whether or not the death of the deceased was the act of God. It discharged its full duty when it told the jury that the defendant was not liable for his death unless it appeared by a fair preponderance of the testimony that the defendant was guilty of negligence which caused it.

Another complaint is that the court refused to instruct the jury that, if there was ample time for the flagman to go back and warn the second section of the train after the first section stopped, and no flagman went back a sufficient distance to give that warning, and if the failure or neglect to do so was the proximate cause of the death of the deceased, the verdict of the jury must be for the defendant. But the court instructed the jury in its general charge that there had been some evidence introduced tending to show negligence on the part of the employés of the first section of the train, and that, if there was any such negligence, the defendant was not in any way liable for it, because the employés of that section did not represent the company, but were fellow servants of the deceased. It further instructed them that the risk flowing from the negligence of these servants was a risk assumed by the fireman. This instruction, in view of the evidence in the case, sufficiently presented to the jury the principle of law stated in the request which was refused. That principle was that, if the proximate cause of the death was the negligence of the brakeman on the first section of the train, the plaintiff could not recover. A charge that the defendant was not liable if the proximate cause of the death was the negligence of any of the employés on the first section of the train clearly announced this rule, because the brakeman was one of those employés, and the whole is greater than any of its parts. Where a rule or principle of law is clearly declared by the court in its general charge, it is not error for it to refuse to repeat it in the words of counsel. Lesser Cotton Co. v. St. Louis, I. M. & S. Ry. Co. (C. C. A.) 114 Fed. 133; Telegraph Co. v. Morris, 105 Fed. 49, 53, 44 C. C. A. 350, 353; Trumbull v. Erickson, 97 Fed. 891, 38 C. C. A. 536; Railroad Co. v. Jarvi, 53 Fed. 65, 3 C. C. A. 433.

One of the charges of negligence was the failure to use reasonable care to keep the coal gate of the engine in proper repair, and it is assigned as error that the court admitted the testimony of a witness that this gate was defective and weak 30 days before the accident. The only ground for this specification is that the time named by the witness was too remote from the date of the accident. But it is competent to prove defects in tools and machinery for a reasonable time before the accident which those defects are charged with inducing, and it cannot be said that 30 days is an unreasonable time within which to permit such testimony to range. There is at least a reasonable probability, in the absence of other evidence, that a defect existing 30 days before an accident was not remedied before the casualty occurred. There was no error in the admission of this evidence.

Finally, it is contended that the court erred because it permitted one witness to testify that a rule of the company which required trains to

keep 10 minutes apart did not apply to any train in particular, and permitted another to state that the conductor upon the first section of this train had "full charge of the running of the train over all the employés on the train." The only grounds for these objections are that the rules are the best evidence of their contents, and that the testimony of the witness as to the power of the conductor was a conclusion of law. Conceding that the written rule was the best evidence of its terms, it was competent for the witness to testify whether or not this rule applied to all the trains of the company or only to a portion thereof, and conceding that the statement of the witness who testified to the authority of the conductor was a conclusion of law, the admission of that testimony was not prejudicial, because the legal presumption is, in the absence of evidence, that the conductor has exactly the power which this witness testified was vested in him (Railroad Co. v. Ross, 112 U. S. 377, 390, 5 Sup. Ct. 184, 28 L. Ed. 787; Railroad Co. v. Baugh, 149 U. S. 368, 381, 13 Sup. Ct. 914, 37 L. Ed. 772), and error without prejudice is no ground for reversal.

There was, therefore, no error in these rulings, and the judgment below must be affirmed. It is so ordered.