# Dantzler v DeBardeleben Coal & Iron Company.

*Action by Administrator of Deceased Employé for Negligence Causing Intestate's Death.*

1. *Negligence in not providing and maintaining safe place for employé to work.*—An employer must provide and maintain a safe place for its employés to work while engaged in the discharge of their duties; but where a repairer and an engineer in charge of the engine to be repaired have performed the duties imposed upon them, respectively, by providing a place of safety for repairing the engine, and the employer has met the requirement imposed upon it to maintain the safety of the place while the work of repairing was being done, by employing a competent engineer who was present to preserve the safe condition of

[Dantzler v. DeBardeleben Coal & Iron Co.]

the place, the employer has performed its full duty to provide and maintain a place of safety for the repairer to do his work, and it can not be held responsible by the repairer under section 2589 of the Code for any failure on the part of the engineer to keep the place in a safe condition ; such failure being the negligence, not of the employer, but of a fellow servant of the repairer.

2. *Action for death of employé; when not maintainable under sub-section 4 of section 2590 of the Code.*—When it is shown that an employé did not come to his death as a proximate result of having, in the discharge of his duties, gone into the place where he was killed, but by the supervening negligence of another or through an unaccountable accident, the personal representative of such employé cannot recover damages from the employer under sub-section 4 of section 2590 of the Code, on the ground that his intestate suffered death in consequence of his going to and being in the place where he was killed by the direction of one in the employment of defendant, whose orders he was bound to obey.

3. *Same.*—If obedience by plaintiff's intestate to the orders of his superior is shown to bear the relation of proximate cause to his death, in order to hold the employer responsible under sub-section 4 of section 2590 of the Code, it must be further shown by the evidence that the superior was negligent in giving the order.

4. *Engineer not a superintendent.*—An engineer, actually operating an engine with his own hands and with the aid of a helper as directed by persons superior to him in their common employment, is not a person "who has any superintendence entrusted to him," so as to make the employer responsible to a person for the negligence of the engineer under sub-section 2 of section 2590 of the Code.

APPEAL from the City Court of Birmingham.

Tried before the HON. W. W. WILKERSON.

This action was brought by S. D. Dantzler, administrator of W. A. McKay, deceased, against the DeBardeleben Coal & Iron Company, to recover damages for alleged negligence which caused the death of plaintiff's intestate. The facts of the case are sufficiently stated in the opinion. The court gave the general affirmative charge for the defendant, to the giving of which the plaintiff duly excepted. There was judgment for the defendant. Plaintiff appeals, and assigns as error the giving of the general affirmative charge at the request of the defendant.

BOWMAN & HARSH and BRICKELL, SEMPLE & GUNTER, for appellant.

WALKER PERCY, *contra*.

McCLELLAN, J.—This action is prosecuted by the personal representative of W..A. McKay, deceased, and sounds in damages for the death of plaintiff's intestate, which, it is insisted, resulted from the negligence of the De Bardeleben Coal & Iron Company. The first count of the complaint avers wrong and negligence on the part of the company itself, under section 2589 of the Code. The other counts are drawn under section 2590 of the Code, and severally present causes of action under subsections 1–4 of that section.

The theory of plaintiff under the first count is, that the defendant company was negligent in not providing and maintaining a safe place for McKay, one of its employés, and engaged in the discharge of his duties as such when he was killed, to work in. The evidence is without conflict to the effect that McKay was killed by the movement of the piston of a blowing engine. This engine was one of five located in the same room, and all in charge of an engineer named Gould. It became necessary to repair this engine, and to that end it was stopped. It is also shown that when such engine needed repairs, it was Gould's duty to effectually disconnect it from the steam supply, and then turn it over to the repairer, after which, and while the repairs were in progress, the engineer's further duty was to keep watch upon it, and prevent any interference with it by third parties, but beyond this he had no further concern with it until the repairs were completed, and the engine turned over to him by the repairers. When the engine had been stopped, disconnected from the steam supply, and turned over to the repairers, it was their duty to further secure its inaction either by inserting timbers in the spokes of the fly wheel, which would, to the extent of the strength of the timbers, prevent its revolution, and consequently all movement of the engine, or by propping the piston rod with a heavy timber, which would prevent its descending, (its movement is vertical,) and, of consequence, all movement of the machine. These methods are about equally efficacious, and are each intended to guard against any accident by which a connection might be reestablished between the boiler and the steam cylinder. In this instance the evidence is without conflict that Gould did all that was required of him in disconnecting the engine from the boiler, and that McKay, before

[Dantzler v. DeBardeleben Coal & Iron Co.]

attempting the repairs he was to make, propped the piston rod in the manner indicated. Notwithstanding all this, however, motion was in some way imparted to the engine, the piston rod descending, crushing the beam of wood intended to support it, and crushed and killed McKay, who was inside of the air cylinder, or blowing tub above the steam cylinder, by drawing after it the iron head of the rod which fills the cylinder or tub. Confessedly this movement could have been imparted to the engine in only one way; that is, by reconnecting the engine with the boilers, and turning on the steam. This was done, the inferences are, either by the engineer, or through the interference of some third person. But for this being done, McKay's place of work was a perfectly safe one, and had been made so by the performance by Gould and McKay on their respective parts of the duties which their employment imposed upon them. The company, in other words, had required these employés to provide a safe place for one of them to work. They had complied with the requirement, and the place of safety had been provided. Certainly to this point, no corporate negligence appears. That the company had discharged its full duty in this regard is demonstrated by the result reached in the actual existence of the conditions it was under an obligation to create. It was under a further duty to maintain the safety of the place while the work was being done. It, however, was not required to insure absolute safety. Its whole measure of duty was to use all reasonable means to that end which a careful and prudent man would resort to under like circumstances. It was not to be expected that the corporation, even were it capable of direct action, would be present in person, so to speak, for the purpose of looking to the maintenance of the safe conditions it had provided. All that was incumbent upon it was to have a proper agent or servant present for this purpose. It could do no more than this, and this it did in the person of Gould, who was charged with the duty of seeing that the safe conditions in respect of the engine be not interfered with by third persons. Gould being a competent person for this service, the company's full duty was performed in having him there to perform it; and any remission of performance on his part was the negligence, not of the employer, but of a fellow servant of McKay,

[Dantzler v. DeBardeleben Coal & Iron Co.]

for which the defendant is not responsible at common law in connection with section 2589 of the Code, and not liable at all, unless, under other counts of the complaint, the evidence brings the case within section 2590 of the Code,—the Employer's Liability Act. The trial court did not err, therefore, in giving the affirmative charge for the defendant, so far as the first count of the complaint is concerned.

It remains to be considered whether the case is brought· by the evidence within, or rather whether there is any evidence tending to make a case under, section 2590 of the Code. It is manifest that plaintiff's intestate · did not come to his death as a proximate result of having gone into and being in the blowing cylinder or tub. His position, but for supervening negligence or unaccountable accident, was a safe one ; and hence there is no merit in the contention that he suffered death in consequence of going or being there by the direction of Boyd, to whose orders he was bound to conform, under subsection 4 of the statute ; and, moreover, had such conformance to Boyd's orders borne the relation of proximate cause to the casualty, there is no evidence whatever that Boyd was negligent in giving the order. These considerations show also the grounds of our conclusion that the case is not brought under subsection 4 of the act ; and it is not insisted that the injury resulted proximately from any defect in the ways, works, machinery, or plant of the defendant, within the intent and meaning of subsection 1.

The chief contention of appellant is that the evidence tended to prove a case under subsection 2 of section 2590 of the Code, and that, therefore, the court erred in charging affirmatively for the defendant ; and our further discussion of the case will be confined to the inquiry whether there is any evidence going to show that McKay's death was caused by reason of the negligence of any person in the service or employment of the master or employer, who had any superintendence intrusted to him, while in the exercise of such superintendence. It is conceded in the outset, for the argument, that the evidence did tend to show that Gould, the engineer, was negligent, either in himself setting the engine in motion, or in failing to prevent some third person setting the engine in motion. There can be no doubt that Gould

and McKay were fellow servants of the defendant, or that the common master was not liable to the one for injuries resulting from the negligence of the other, unless that other was negligent while in the exercise of superintendence intrusted to him by the employer. Was any superintendence intrusted to him? We are aware that the eighth section of the English employer's liability act, which contains a definition of the phrase, "person who has superintendence intrusted to him," is not embodied in our statute, which is taken from, or in most respects modelled after, the English statute; and we need not take issue with counsel that this is a pregnant omission, implying an intent on the part of the legislature to make the common master liable whenever the injury complained of by one servant is caused by any person in the service who has any superintendence intrusted to him, whether superintendence be his sole or principal duty or not, and whether or not he is ordinarily engaged in manual labor, provided only that the damnifying negligence occurs while such person is in the exercise of whatever superintendence is in fact intrusted to him. Yet neither the incorporation of that part of section 8 to which we have referred into the English statute nor its omission from our own, neither its import in the one nor the implication involved in its omission from the other, did or can exert any influence upon the meaning of the word "superintendence." That word has the same significance in both statutes as had the definition of the expression, "person who has superintendence intrusted to him," never been incorporated in the one or omitted from the other. The definition is not of the word "superintendence" at all, but only of the amount or degree of superintendence which must be intrusted to a person to fill the terms of subsection 2; the abstract quality of superintendence being the same whether it is intrusted to a person in sufficient degree to come within the statute or not. So that we must look elsewhere than to the English statute, or to the fact that the English definition of the phrase, "person who has," etc., has been omitted from our statute for a definition of "superintendence." We find this in Webster's Dictionary: "Superintend: To have or exercise the charge and oversight of; to oversee with the power of direction; to take care of with authority,—as, an officer superintends the

building of a ship or the construction of a fort; 'God exercises a superintending care over all his creatures.'" "Superintendence : * * * The act of superintending; care and oversight for the purpose of direction, and with authority to direct. Synonyms : Inspection; oversight; care; direction; control; guidance." And this in Worcester's Dictionary : "Superintend, (L. superintendo; super, over, and intendo, to direct one's attention to ; in, to, towards, and tendo, to stretch) : To oversee; to over-look; to have the care and direction of." "Superintendence : * * * The act of superintending; oversight; superior care; direction; inspection." The following from the Century Dictionary : "Superintend : To have charge and direction of, as of a school; direct the course and oversee the details of, (some work, as the construction of a building or movement, as of an army;) regulate with authority; manage." And Roberts & Wallace, in their work on Duty and Liability of Employers, say : "The word 'superintendence' seems properly to imply the exercise of some authority or control over the person or thing subjected to oversight. * * * Accordingly it may, it is thought, be safely assumed that the person for whose negligence an employer is liable under this subsection (2) must be one to whom he has delegated some of that authority or power of control which he would otherwise himself have exercised." Pages 260, 261. To leave out of view for the moment the fact that Gould, the engineer, had a helper or assistant in the manipulation of these engines, we have simply the case of a man engaged in the manual operation of the machines. With his own hands he started the engines, regulated their revolutions, and stopped them ; and all this, even to the number of revolutions per minute, he did at the direction and under the control of persons superior to him in the common employment. His was not the duty of giving, but of obeying, directions. He did not draw the attention of others to a thing to be done by them, but himself was required to do whatever was to be done. His care of the engines was not for the purpose of direction, and with authority to direct, but was a care to be effectuated by his own hands. He was not to guide and control others in their operation of the engines, but to control and regulate the engines by the laying on of his own hands. He was not to direct the

course and oversee the details of the operation of the machines, but the course was marked out by superior authority, and the details were executed by his personal physical exertion. He had none of that authority or power of control which the employer would otherwise himself have exercised, but all authority in the premises properly belonging to the master was exercised upon him in directing his services as a manual laborer. To say that a man oversees, overlooks, directs, guides, controls, inspects, has a care of, superintends an act which he himself wholly performs, is a contortion of language not to be tolerated. These terms, indeed, are always resorted to, to indicate that the thing done was not manually done by the person spoken of, but at his bidding. Each of these synonyms, and the word "superintendence" itself, must be taken in this ordinary and usual significance here. "Superintendence," in the statute, whatever else it may mean, has no application at all to a person whose sole duty is to be performed by personal acts of manual labor, or any direct bringing to bear of the physical energies to the end in view. It has been said, and is doubtless true in a sense, that the superintendence contemplated by the statute "may be either over men or machinery, plant," etc., but, whether over the one or the other, it must still be superintendence, power of direction, superior care, and control, with authority, as distinguished from direct personal manipulation. And while there may possibly be superintendence of the operation of a machine or a number of machines by one person without intermediate human agency, such a case is most difficult of conception. We are inclined to believe that its possibility even does not exist, and to think that what is really intended by the declaration that there may be superintendence of machinery is, that where one has authority to have machinery operated, to direct its operation, to overlook it, etc., and the means at hand in others to carry out his directions, he is superintendent both of the machine to be operated and of the men who are to manipulate it as he directs. This state of facts was brought forward in the argument upon which the declaration referred to was based, (Rob. & W. Employ. Liab. p., 262,) , and we know of no case to the contrary. The case of *Railroad Co. v. Burton,* 97 Ala. 240, 12 So. Rep. 88, virtually adopts this view, and

the case of *Pipe Works v. Dickey*, 93 Ala. 418, 9 So. Rep. 720, is in no sense opposed to it, since this question was not decided, or at all discussed, in that case; but, to the contrary, the existence of superintendence in Calahan, who really only had manual charge of a machine, was only assumed for the purpose of placing the defense on the ground of contributory negligence, of which there was no serious doubt on the evidence. Whether, however, there may possibly be a case of superintendency purely of machinery or not, it is most clear to us that Gould's position involved no such case, dissociated from consideration of the fact that he had a helper, whose duties are shown in the evidence. Whether he had any superintendence intrusted to him, in view of this consideration, is a question not necessary to be decided in this case. If any such superintendency existed in that connection it was not a general superintendency over the helper and the machines, not a general power of having the machines operated as he directed by the hand of the helper, but only a special superintendence to direct the helper to assist him, Gould, in the manual labor of operating them. It being his duty to personally perform—not merely direct—this labor, and his right only to have the other man help him to perform it, his relation to the machinery being primarily that of a laborer, it can not be said that he was in the exercise of any superintendence while he was discharging this primal duty of a manual laborer. His superintendence, if any he had, extended only to his actual direction of the helper, and ceased whenever he did any act in person and in the line of his duty as the engineer in charge of these machines; the case in this respect being radically different from those of *Osborne v. Jackson*, 11 Q B. Div. 619, and *Railroad Co. v. Burton*, 97 Ala. 240, 12 So. Rep. 88, 94, in which the sole duty of the negligent person was that of superintendence, and he voluntarily co-operated in manual labor. The idea that it was not the legislative purpose to make the employer liable for the negligence of persons in charge of machinery, plant, and the like for the purpose of operating the same, unless the machinery is on or connected with railroads, is strengthened by a reference to sub-section 5 of the act, which allows a recovery when the injury is caused by the negligence of any person, etc., who has charge

[Haynes et al. v. McRea.]

or control of any signal points, locomotive engine, switch, car, or train upon a railway, or of any part of the track of a railway. If the contention of counsel be sound, that there may be superintendence of machinery, plant, etc., purely, there was no necessity for the enactment of this clause, since the matters provided for in it are embraced in clause 2. The legislature supposed they were not, and therefore enacted subsection 5.

The evidence in this case is without conflict to the effect that when the engine moved or was set in motion Gould's helper was not even on the premises, and that, if the engine was started by Gould, it was the direct, negligent act of a manual laborer, not in any sense done in the exercise of superintendence, conceding that at any time superintendence was intrusted to him. This leaves the case outside of subsection 2 of section 2590. The death of McKay, on this hypothesis, was not caused by the negligence of a person to whom superintendence was intrusted "while in the exercise of such superintendence." On the other hand, had the jury concluded that Gould did not start the engine, but that it was set in motion by some third person in consequence of his failure to prevent outside interference, the result must have been the same. On this hypothesis Gould was a mere watchman, for whose negligence the company was not responsible to his fellow servant, McKay. Rob. & W. Employ. Liab., 260. In no possible aspect of the evidence was the plaintiff entitled to recover. The affirmative charge for defendant was properly given.

Affirmed.