SOUTHERN RAILWAY COMPANY *v.* IRA F. CHEAVES.

RAILROADS. ·*Constitution* 1890, *sec.* 193. *Fellow-servant rule. Superior servant. Construction.*

  A railroad employe, injured by the negligence of a superior officer or agent of the company having the right to direct his services, can recover therefor from the railroad company, under Constitution 1890, sec. 193, modifying the common-law fellow-servant rule, although his injuries were not received when executing some special command or order given by such officer or agent, but while engaged in the discharge of his ordinary duties, and when such officer or agent was engaged in discharging only the ordinary duties of his station.

FROM the circuit court of Lowndes county.

HON. EUGENE O. SYKES, Judge.

Cheaves, the appellee, was plaintiff, and the railway company, defendant in the court below. From a judgment in plaintiff's favor the defendant appealed to the supreme court. The case was before in the supreme court on the appeal of the plaintiff, and the decision then rendered is reported. *Cheaves* v. *Southern Railway Co.*, 82 Miss., 48 (33 So. Rep., 649; 34 So. Rep., 385).

Plaintiff was a fireman, and was injured by the collision of two trains at Columbus, Miss., caused by the negligence of the

engineer in charge of the engine on which plaintiff was at work, in going to sleep. The evidence showed that there was a train standing alongside the station at Columbus, on what was known as the "house track," ready to go out. An incoming freight train of thirty-five cars from the east, being pulled by the engine on which the plaintiff and the sleeping engineer were, crashed into the one standing on the switch at a rate of speed variously estimated at from fifteen to thirty miles per hour. There was a whistle board about a mile east of the Columbus depot, at which it was the duty of the incoming engineer to blow the whistle and slow up to a speed not exceeding ten miles an hour, with his train under complete control. There was a sidetrack six hundred yards east of the station, on which all freight trains from the east went. Columbus was a terminal station, and the engine, when brought in, was turned over to a hostler, and the yardmaster, with the yard engine, took charge of the train. There were five public crossings between the whistle board and the sidetrack, at all of which the whistle should have been blown and the bell rung. This was not done, and the train came in without warning of any kind. The yardmaster, who was in the eastern part of the yard, tried very hard to flag the train, but his efforts were not heeded. When this east-bound train left Steen's, the nearest station east of Columbus, eleven miles away, the engineer told the plaintiff to keep the engine red-hot; he was going in. This was the last word spoken by the engineer to the fireman. There were verdict and judgment for the plaintiff for $7,500. Defendant's motion for a new trial was overruled. The opinion of the court contains a further statement of the facts.

*A. F. Fox,* for appellant.

Even if the engineer is in some sense the superior officer, having the right at times to control or direct the services of the fireman, still, in the sense of the constitution, he must, in order to make the employer liable, be in the exercise of that control

or direction of the fireman's services at the time of the injury, and that control or direction of the fireman's services must be the proximate cause, the *causa causans,* of the injury.

This court, in the case of *Farquhar* v. *Railway Company,* 78 Miss., 199, not only recognized the doctrine of fellow-servants as still existing, but approved its wisdom by declaring that "society, in its most refined and elevated conditions, requires its continuance." So there can be no prejudice against the principle in considering the relative duties and obligations of master and servant. Sec. 193 of the constitution will not in its construction be extended by implication beyond its evident and plain import. This court, in the case of *Evans* v. *Railway Company,* 70 Miss., 530, expressly deprecates enlarging this constitutional provision by interpretation, declaring the fact to be incontrovertible that the purpose of the framers of the constitution was only to modify the doctrine to a certain extent, and that extent was carefully expressed in sec. 193. In this case the court says that this constitutional provision has reference to a superior agent or officer of the sort, well known as such, and any other person in the company's service, by whatever name, who may be entrusted with the right to control and direct the services of others, according to his discretion and judgment, one to whom is committed the direction or control of others for the accomplishment of some end, dependent on his independent orders born of the occasion, sprung from him as director, and not consisting of the mere execution of routine duties in pursuance of fixed rules by various employes, each charged with different parts in the general performance. This case is fully reviewed and approved by United States court of appeals in *Fenwick* v. *Illinois, etc., R. R. Co.,* 100 Fed. Rep., 247.

The soundness of this view is apparent, and if this court is to adhere to it, it must be held that an engineer and fireman are fellow-servants. The evidence in this case discloses no authority in the engineer to direct the services of the fireman according to his discretion. The engineer had no discretion. He acted

under fixed and definite rules in the operation of the engine, and only had authority to direct the fireman, not according to his discretion, but according to fixed rules prescribed by a common master for the guidance of both operating together in running the engine.

It would be absurd to say that the engineer had any authority to control the fireman "for the accomplishment of some end dependent on his independent orders." The engineer can give no independent orders, and did give none in this case. On the contrary, all orders given by him to the fireman consist, in the language of Justice Campbell, "in the mere execution of routine duties in pursuance of fixed rules." In the operation of the engine the engineer simply communicates to the fireman according to these rules. It is clear under the statement of Engineer Graham Jones that the fireman was no menial employed to wait on the engineer and do his bidding, obeying his independent orders; he was employed by the same master by whom he was paid, and to whom, in consideration of his salary, he was under a responsibility fully commensurate with that of the engineer to run the engine, protect the company's property, his own life and those of his fellow-servants. His duties were in the same line as those of the engineer. He was the helper, and as such he had become, according to his own testimony, a competent engineer; in fact, it is the design of these rules to train firemen in all the duties of the engineer, so that they will in time be promoted to that position.

When he neglected to look out for signals, and allowed the train to run into Columbus in such a reckless way, he was guilty of a wanton and willful violation of the high duty he owed to his employer and to the public, and it is unthinkable that a court of justice will compel an employer to reward any employe for such outrageous, criminal conduct. *Dantzler* v. *De Bardeleben Coal & Iron Co.,* 101 Ala., 309 (22 L. R. A., 361); 2 Bailey, Personal Injuries, 749; *Haynes* v. *R. R. Co.,* 3 Cold., 222;

*Illinois, Etc., R. R. Co.* v. *Hooley,* 45 Ill. App., 205; *Mulligan* v. *R. R. Co.,* 19 Montana, 135.

Some relation of cause and effect between the right of the engineer to control the services of the fireman, and the injury sustained by the fireman, must be shown. The engineer must have been at the time of the injury in the exercise of that authority and that control of the services of the fireman, which exercise of authority and control must have been the proximate cause of the injury sustained by the fireman. We do not contend that the authorities are uniform on this question, but insist that all reason and logic and sound principle are in the support of our position and of the authorities which we shall now cite. In the case of *B. & O. R. R. Co.* v. *Baugh,* 54 Am. & Eng. R. R. Cas., 328 (149 U. S., 367), in which it is held that an engineer and fireman are fellow-servants even in the absence of the conductor, in which case, according to the rules of the company, the engineer is to be considered as conductor, the court said: "It may further be noticed that in this particular case the injury was not in consequence of the fireman's obeying any order of his superior officer. It did not result from the mere nature of control. It was through negligence on the part of the engineer in running his engine, and the injury would have been the same if the fireman had had nothing to do on the locomotive and had not been under the engineer's control."

In the case of *N., C. & St. L. R. R. Co.* v. *Wheeless,* 10 Tenn., 74 (15 Am. & Eng. R. R. Cas., 315), in which it is held that the engineer is the fellow-servant of the brakeman, the court says: "The principle upon which our rule is based—to wit, that the master will be liable for injuries resulting to one servant from the negligence of another servant who is the immediate superior of the first—is based, not upon the idea of the relative rank of the two servants or the general superiority in position, intelligence, or skill, or in the wages received, but upon the ground that the one is placed under the orders and direction of

the other, and required to submit to and obey such orders in the performance of his duties. The plaintiff cannot in any fair sense be said to have been acting in this particular matter under the orders either expressed or implied of the engineer, and the mere fact that the engineer was the superior of the plaintiff in position, skill, intelligence, and pay does not change the result."

In the case of the *Chicago & Alton R. Co.* v. *May,* 15 Am. & Eng. R. R. Cas., 320 (Ill. case), it was held that the mere fact that one of a number of servants who are in the habit of working together in the same line of employment for a common master has power to control and direct the action of the others with respect to such employment will not of itself render the master liable for the negligence of the governing servant resulting in an injury to one of the others without regard to other circumstances. On the other hand, the mere fact that the servant exercising such authority generally labors with others of a company will not of itself exonerate the master from liability for the foreman's negligence in the exercise of his authority over the others. Every case in this respect must depend upon its own circumstances. If the negligence complained of consists of some act done or omitted by one having such authority which act relates to his duties as colaborer with those under his control and which might just as readily have occurred with none of them having such authority, the common master will not be liable; for instance, if the section boss of a railroad company, while working with his squad of men on the company's road, should negligently strike or otherwise injure one of them, the company would not be liable, but when the negligent act complained of arises out of and is the direct result of the exercise of the authority conferred upon him by the master over his laborer, the master will be liable. The court will find various authorities to the same effect as the above cited in 5 Rapalje & Mack's Digest of Railway Law, 682.

*Orr & Harrison, Hoke Smith,* and *H. C. Peeples,* for appellee.

It seems singular that contributory negligence should be insisted upon in this court, after it has been passed upon in the court below and reviewed by the court below on motion for new trial, and in view of the decision of this court in *Nesbitt* v. *City of Greenville,* 69 Miss., 22.

Plaintiff was under the control of the engineer and did what the engineer told him to do. The rule of the defendant (Rule No. 547) provided that "when with the engine they (firemen) must obey the orders of the engineman." Rule No. 501 provided that "they (enginemen) are also responsible for the performance of duty by their firemen, must instruct them in such duties, when necessary, and must report incompetence or neglect of duty upon their part," etc. Rule No. 554 provided that "they (enginemen) must instruct their firemen in all matters pertaining to the operation and care of engines, and may allow them to handle the engine at stations, under their immediate supervision, but not permit them to do so under any other circumstances," etc.

Driven from the position that the fireman is not under the control of the engineman, counsel for the appellant seek to have a strained construction put upon the constitution of Mississippi, and to interpolate the words: provided the person injured receives his injury as a consequence of obeying some order of the superior or of the person having the right to direct or control his services.

It has been held that employers' liability acts should be construed liberally in favor of employes. 2 Labat's Master & Servants, secs. 639–663. Further, that the effect of the provision that the injured employe "shall have the same rights and remedies  .   .   .   .   as are allowed to persons not employes" is simply that in the cases specified the defense of common employment is taken away. *Ib.,* sec. 661, note 3.

It would be vain, even were we so disposed, to try to induce this court to hold that the fireman could recover because of the negligence of the engineer, but for the present state of the law of this state. The clear and emphatic language of Chief Justice Woods, in *Lagrone* v. *M. & O. R. R. Co.,* 67 Miss., 592, following the cases of *Railroad Co.* v. *Hughes,* 49 Miss., 258; *Railroad Co.* v. *Petty,* 67 Miss., 255, seems to effectually determine what was the old rule.

The cases of Lagrone and others were all decided before the adoption of that constitution, and therefore can be helpful to us mainly to show what the law was and what the convention decided to change in the law. The Lagrone case held that though the section master "was superior in rank" to the appellant, and appellant "was actually under his direction and control," the two were fellow-servants. Within the same year the law of Mississippi was changed so as to provide that where the injury results from the negligence "of a superior agent or officer, or of a person having the right to control or direct the services of the party injured," a recovery could be had. So that, although the parties might be fellow-servants, as theretofore distinctly held, if one were superior to the other, or had the right to control the services of the other, or to direct the services of the other, there could be a recovery, if the superior, or the one having control or the right to give direction as to the services of the other, were negligent.

We respectfully submit, therefore, that if the Lagrone case had arisen after the adoption of the constitution the decision would have been different.

Let us come to the consideration of cases decided since the adoption of the constitution. In *Evans* v. *L., N. O. & T. Ry. Co.,* 70 Miss., 527, it was held that a brakeman could not recover for an injury caused by the negligence of an engineer, because the engineer was not the superior of the brakeman, nor did he have the right to control or direct the services of the brakeman. It did not appear in that case that the relation of the engineer

to the brakeman was defined by any particular rule of the railroad company, or was in any way different from the ordinary and usual relations of such employes. If the case had been one of conductor and brakeman, under the ordinary relations of those employes and the rules generally in force on railroads as to them, the case would have been one which it seems would have been within the plain language of the constitution. *R. & D. Ry. Co.* v. *Rush,* 71 Miss., 987.

In *Illinois, Etc., R. R. Co.* v. *Price,* 72 Miss., 862, it was held that the yardmaster and switch engine foreman (who is equivalent to the conductor) were the superior servants to the brakeman and for their negligence in failing to call his attention to the danger in coupling cars, he could recover.

In *Farquhar et al.* v. *A. & V. Ry. Co.,* 78 Miss., 193, it was held that a yardmaster riding on a switch train was a fellow-servant of the engineer. No attempt was made to bring that case under the constitution, but it was sought to induce the court to review previous decisions as to who were fellow-servants outside of the constitution.

In *Fenwick* v. *Illinois, Etc., R. R. Co.,* 100 Fed. Rep., 247, a case arising in Mississippi, it was held that a member of a switching crew was a fellow-servant of another of the crew who had been temporarily made foreman, and was not within the constitutional provision. It appeared that the temporary foreman had no authority to command, was of the same rank, and had no power to employ or discharge.

. This decision is not controlling here, and while it is from a court of high rank and ability, we venture to say that it is of somewhat doubtful authority, since the fact that the one was only temporarily foreman should not matter, and the right to employ or discharge is not controlling as to superiority or the right to direct the services of another.

Let us turn to cases decided elsewhere. *Gal., H. & L. A. Ry. Co.* v. *Ford,* 46 S. W., 77 (Tex. Civil App.); *Houston & T. C. R. R. Co.* v. *Stuart,* 48 S. W., 799 (801 Tex. Civil App.);

*Houston & T. C. R. R. Co.* v. *Stewart,* 50 S. W., 333 (92 Tex., 40); *St. Louis, Etc., Ry.* v. *Tuohey,* 67 Ark., 209 (54 S. W., 577); *St. L., I. M. & S. Ry. Co.* v. *Thernard,* 70 Ark., 411; *Davis* v. *N. Y., N. H. & H. R. Co.,* 34 S. E., 1070 (159 Mass., 532); *C., H. & D. R. Co.* v. *Margrat,* 37 N. E., 11 (51 Ohio St., 130); *Union Pacific Ry. Co.* v. *Doyle,* 70 N. W., 43 (50 Neb., 555); *Criswell* v. *Montana, Etc., Ry. Co.,* 42 Pac., 767 (17 Mont., 189); *Rutherford* v. *Southern Ry. Co.,* 56 S. C., 446 (35 S. E., 136); *Bussey* v. *C. & W. C. Ry. Co.,* 30 S. E., 477 (52 S. C., 438); *Peirce, Receiver,* v. *Van Dusen,* 78 Fed., 693, 705; *C., H. & D. R. Co.* v. *Thiebaud,* 114 Fed., 918; *Southern Pac. Co.* v. *Schoer,* 114 Fed., 466.

Argued orally by *James T. Harrison,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

We have already, in the original opinion in this case (82 Miss., 48), and in response to the suggestion of error, held that under Rule 574 of the company, providing that "when with an engine they must obey the orders of the engineman," as applied to the facts of this case, this engineer was the superior officer of the fireman, and a person having the right to control and direct the services of the fireman, within the meaning of sec. 193 of the constitution of 1890. That holding is the law of this case. No sound principle requiring the fireman, in the interest of the safety of the traveling public, carefully to discharge all the duties of his station in the varying circumstances of different cases, should be disregarded. We deal with this case on its particular facts, and under the rule we have quoted. The engine in this case was leaky, and the coal and water short. The train had been delayed many hours on account of a wreck. It was not only requisite that the train should reach Columbus, but that the engine, when it did reach Columbus, should have a good fire, since the engine was to be turned over to the hostler to coal it up and get it ready to go out again soon after. The

distance from Steen's to Columbus was only eight or nine miles. The train was running at a rate, perhaps, of twenty to twenty-five miles an hour. Some witnesses stated fifteen, and some thirty, miles an hour. At the lowest estimate it would only take about half an hour, and, at the highest, a quarter of an hour, to run into Columbus. The engineer had told the fireman to keep her "red-hot; we are going in." "Keep her red-hot"— meaning, of course, for the fireman to give his concentrated attention to keeping up the steam. The fire had to be constantly fed. The coal had to be moved twice to get it out from the rear of the tender to the fire box. A disinterested witness shows that the furnace door was open as the engine approached the train with which it collided. The fireman was evidently working hard at his job of keeping the furnace hot. The fireman was under the duty of obeying the directions of the engineer, which directions amounted to a command to him to be especially attentive to keeping the furnace red-hot for the few minutes it would take to run into Columbus. The fireman did not know or suspect that the engineer was asleep. The engineer was at his accustomed place. The fireman was at work behind him, the engineer's back being towards him. The work of the fireman took him, back and forth, from the rear of the tender, the sides of which would naturally shut off his view, and the glare of the furnace might well have blinded his eyes to a greater or less extent. The engineer gave no long whistle at the yard limits to warn the fireman that the train had come to the yards, as it was his duty to have done. In addition to this, the testimony shows that the grade was such at the coal chute as to require the engine to go fast to get up it. The distance from this coal chute to the place of collision was about one-half mile. It would not have taken exceeding one to two minutes to run that distance at the rate at which the train was moving. The fireman was shown not to have been familiar with the yard. The night was dark and foggy. The attention of the fireman

was called to the engineer just before the collision, and he sprang to awaken him, saw the headlight of the opposite engine, turned too late to jump, and was caught. The fireman had never been in the city of Columbus in the daytime but twice, and was accustomed to go right to his boarding house on leaving his engine. The command of the engineer to the. fireman evidently meant, in view of the very little coal and very little water they had, and of the great delay which had been caused by the wreck, that he was going to do all he could to make up time and get to Columbus with the small supply of coal and water he had before it gave out; and his order "to keep things red-hot" the fireman was proceeding to diligently execute from the time it was given until the collision. It is impossible to hold, under this testimony, that the fireman was guilty of contributory negligence.

The chief contention of learned counsel for appellant is that the clause in sec. 193 in the constitution of 1890 making the company liable to an employe, where his injury results from the negligent act of one having a right to direct his services, should be so construed as to mean that such employe can so recover only if and when the employe is injured whilst executing at the very time of his injury some special command or order given by his superior officer, or by the person having the right to control or direct his services, while such superior officer, or such person having the right to direct his services, is at the time in the exercise of the right to superintend him, or to so direct his services; and this argument is pressed with great ingenuity and ability. The authority chiefly relied on by learned counsel for appellant is the case of *Dantzler* v. *De Bardeleben Coal & Iron Co.,* 101 Ala., 309 (14 South., 10; 22 L. R. A., 361). But so far as that case touches this particular contention, it rests upon the express language of the Alabama employers' liability act, which provides that the employe cannot recover in such case unless the negligent act

of the person vested with superintendence is done "while such person is in the exercise of superintendence entrusted to him." There is no such language in our constitution. The supreme court of Alabama says that their act is modeled after the English statute, which also contains a similar clause to the one cited. A single consideration will show the inapplicability of the Alabama case. Suppose the Alabama statute should be so amended as to leave out this clause above cited, and an injury should occur under the new statute, which would then be like sec. 193 of our constitution; would counsel, in Alabama, be heard to argue, with that clause left out, that the employe could only recover by showing that the superior officer, by whose negligence he was injured, was at the time in the exercise of his superintendence—giving him some special order or command which caused the injury? Manifestly not. The conclusive reply would be that, when the legislature dropped the clause cited, it meant to enlarge the liability beyond such as would obtain merely whilst the superior officer was in the exercise of his superintending power. And that is just the condition and effect of our constitution and statute, which are not limited by any such words as "while in the exercise of superintendence entrusted" to such superior officer, or such person having the right to direct the services of the employe. There seem to be three classes of employers' liability acts. In many states the legislature has entirely abrogated the fellow-servant rule. Others, as Massachusetts and Alabama, following the English statute, have adopted statutes, which have declared the master liable only when the superior officer entrusted with superintendence is actually engaged in giving his orders as superior officer when the injury occurs. It is proper to note that the Alabama statute to this effect was adopted in 1885, some years before our constitution was adopted. It is perfectly plain that the framers of our constitution intended to go beyond this rule. The gross absurdity of the extreme application of the old common-law rule as to fellow-servants, illustrated in this state in the cases

of Lagrone and McMaster, had become intolerable, and the very object of the constitutional provision was to enlarge materially the right of employes to recover; and so sec. 193 expressly provided, as do the employers' liability acts of many other states, that the injured employe should have the right to recover where the injury resulted from the negligence of a superior agent or officer, or of some person having the right to direct or control the services of the party injured, and also in certain other specific categories. This is the rule of our constitution (sec. 193), and of § 3559, Code 1892, passed in pursuance thereof. It would be the most manifest departure from proper construction to give a narrow, restricting interpretation to these plain provisions in our organic law, framed with the view of expanding and enlarging the rights of injured employes, and abrogating, in part, the harsh rules of the common law on this subject. It has been expressly held that all of these employers' liability acts are, in view of the object of their passage, to be construed liberally in favor of employes. Labat's Master and Servant, Vol. 2, sec. 639, through sec. 663.

Our constitution plainly means that wherever an employe is injured by the negligence of a superior officer, or of a person having the right to direct or control his services, such employe is entitled to recover, whether he is at the time obeying any special command born of the exigencies of the occasion, or is engaged merely and simply in the discharge of his ordinary routine duties; such superior officer or person also being engaged in discharging simply the primary duties of his station, and not the positive duties of the master. No such exception can be justly ingrafted on the plain stipulation of our constitution and statutes. We find the construction which we announce already well settled in many states construing similar statutes. In South Carolina, in the case of *Rutherford* v. *Southern Railway,* 56 S. C., 446 (35 S. E., 136), the court construed the constitution of South Carolina adopted in 1895, which is an exact rescript of sec. 193 of our constitution, just as we here construe

ours.   This case is very persuasive, because it is upon an identical constitutional provision.   In *Criswell* v. *Montana Cent. Ry. Co.,* 17 Mont., 203 (42 Pac., 769), the court was called upon to construe a statute along this line, and said: "The action of the court in respect to these instructions was confessedly based upon the opinion that sec. 697 (division 5), p. 817, Comp. St., 1887, which reads as follows: 'That in every case the liability of the corporation to a servant or employe acting under the orders of his superior, shall be the same in case of injury sustained by default or wrongful act of his superior, or to an employe not appointed or controlled by him, as if such servant or employe were a passenger'—constituted the law fixing the liability of the defendant in the case, and that the declaration of law, as requested, was in conflict with that statute.   This statute is therefore brought before this court for the first time for judicial interpretation.   The counsel for the defendant contends that under the common law the defendant corporation has performed its whole duty to the plaintiff, as its employe, when it has used ordinary and reasonable care in providing (1) safe machinery, (2) furnishing a safe place to work, and (3) competent fellow-servants to prosecute the common employment, and that the statute in question does not increase or change the defendant's liability at common law; that it does not change the common law in relation to fellow-servants; that it does not establish the superior servant doctrine and enlarge the common-law liability of the defendant in any respect, and was not so intended by the legislature.   The learned counsel for the defendant, in his able and exhaustive brief, has cited numerous authorities in support of the common-law rule applicable in such cases, but these authorities do not attempt to discuss the effect of such legislation as is here involved upon the common-law rule.   It cannot be disputed that the common-law rule has been modified, if not changed, both in England and in many of the American states, by recent legislation on the subject.   So we think we may omit a discussion of the common-law rule, and look to the course and

effect of modern legislation on this subject. Beach, in his work on Contributory Negligence (sec. 376), says: 'It became evident early in the course of the development of the law upon this point that, in order to preserve to the employe any vestige of the right of action which the common law gave him against his employer, in a proper case, for personal injuries attributable to the negligence of another, and received in the course of the common employment, the tendency to extend the rule which had its inception in England in the case of *Priestly* v. *Fowler,* 3 Mees. & W., 1, and in the United States in the early cases of *Murray* v. *Railroad Co.,* 1 McMul. (S. C.), 385 (36 Am. Dec., 268), and in *Farwell* v. *Railroad Co.,* 4 Metc. (Mass.), 49 (38 Am. Dec., 339), and under the operation of which the defense of a common employment had come to be urged to the practical destruction of all such rights of action, would have to be checked, and could only be checked by legislation. Accordingly, on the 7th of September, 1880, parliament changed the law of England by passing the employers' liability act (43 and 44 Vict., ch. 42), which, pending its final enactment, was popularly known as the "Gladstone Bill," and which at the time attracted much attention both here and in England.' Section 377 of the same work contains a resume of this act of parliament, and subdivisions 2 and 3, as the author has subdivided the act, are instances in which the master is liable for injuries received by a servant from the negligence of a superior. These subdivisions are as follows: '(2) By reason of the negligence of any person entrusted with superintendence. (3) By reason of the negligence of any superior workman whose orders the injured person was bound to obey.' The same author, in sec. 379, says: 'Comparatively recent legislation in several of the states of the Union has in some degree modified, for us in this country, the rule of non-liability which the courts of every jurisdiction, as we have seen, have uniformly declared. In California, Dakota, Georgia, Kansas, Iowa, Mississippi, Montana, Rhode Island, Wisconsin, Wyoming, Alabama, Massachusetts, and Missouri statutes, the

substance of which is set out in the notes, have been passed, under the wholesome operation of which the old rule of nonliability is practically abrogated. Except in California and Dakota, it may be said that in each of the states just mentioned the old rule is entirely abandoned, and an adequate remedy provided by the statutes for the proper protection of railway employes, while in California and Dakota the statutes define the limit of liability, and, *quoad hoc,* recognize and assert the propriety of legislation upon this subject.' So it will be seen that, in the opinion of this author, the common-law rule of non-liability in such cases is practically abrogated by such legislation, and entirely abandoned in the states named, including Montana, except in the case of California and Dakota. But we are not without further light and assistance in the interpretation of the statute under discussion. It has been the subject of direct construction by two of the most respectable courts of the country. In the United States circuit court of the northern district of Iowa, in the case of *Ragsdale* v. *Railroad Co.,* 42 Fed., 383—a case involving directly the construction of this statute and its effect upon the common-law rule insisted upon in this case—Judge Shiras, delivering the opinion of the court, said, 'On the part of plaintiff it is further claimed that the statute of Montana in force when the accident happened modifies the common-law rule in regard to the liability for the acts of fellow-servants;' and, after quoting the statute, he continues: 'This statute does not go to the length of abrogating the general rule that the master is not liable to an employe for the consequence of the negligence of a co-employe, but it does enact, in effect, that a superior is not a co-employe with an inferior, and that one may be a superior, as compared with another, even though the former does not control the latter. The enactment is based upon the known fact that in carrying on the business of railroading there are recognized grades among numerous classes of employes, and, while they are all working for a common master, and for an ultimate common result, they are practically not all

servants.  The present plaintiff was a fireman, and his duties were limited generally to attending to the furnace and other matters upon the engine.  He did not belong to that class of employes that were charged with the duty of controlling the movement of the train.  The answer expressly avers that the collision was caused by the negligence of the officials in command of the movement of train No. 1, and there is no fact averred which tends to show that, as to them, the plaintiff occupied any other position than that of an inferior, within the meaning of the statute in Montana.  The act of negligence set up in the answer is that train No. 1 was moved past the telegraph station in violation of the rule of the company, and it is averred that this was done by those in command of such train.  It will certainly not be claimed that a fireman upon the engine is an employe charged with the control of the moving of the trains— a duty primarily imposed upon the conductor—and it is certainly the fair inference that in the moving and running of trains the conductor is the superior of a fireman.  In other words, the conductor, or party charged with the control of the train, is a superior, as compared with a fireman, within the meaning of the Montana statute.  Under this section the corporation is made liable to any one of its employes who, without negligence on his part, is injured by the default or wrongful act of a superior, even though the latter has no control over the former.  Whether, therefore, the liability of the defendant corporation is to be determined under the common-law rule, or under the statute of Montana, the facts set forth in the answer do not show that the act of negligence causing the collision and consequent injury to plaintiff was the act of a co-employe, but, on the contrary, it would appear therefrom that such an act of negligence was the act of the representative of the corporation who was also the superior of the plaintiff.  This being the conclusion, it follows that the answer is insufficient, and the demurrer thereto is sustained.' ''

After sustaining the demurrer in the case, as shown above, the defendant amended its answer, and alleged that plaintiff's injuries were the result of the negligence of the engineer of the train on which plaintiff was employed, whereas in its original answer the defendant had alleged that the injuries of plaintiff resulted from the negligence of the conductor of another train. The court sustained a demurrer to the amended answer, and, in doing so, Judge Shiras said: "The amended answer shows that the engineer was primarily charged with the duty of halting the train at Evaro Station, and that he negligently failed in the performance of this duty. It seems to me that the same rule must be applied to the one case as to the other, and that the reasons which sustain the liability of the company in case of the negligence of the conductor apply with equal force to the negligence of the engineer, when such negligence occurred in a matter touching the actual movements of the train, and which was at the time wholly under the control of the engineer. In such matters the engineer represents the company, and for his negligence the company must respond. In the circuit court of appeals, eighth circuit, in *Northern Pac. R. R. Co.* v. *Mase,* 11 C. C. A., 63 (63 Fed., 114), decided July 16, 1894—a case involving directly the interpretation of the Montana statute under discussion, and its effect upon the common-law rule— Judge Sanborn, speaking for the court, said, 'The result is that the right of recovery in this action, if it exists at all, must rest on the statute of Montana,' and, after citing the statute, proceeded as follows: 'This section is found in a chapter of the general laws of Montana relating to railroad corporations, and it seems to affect the liability of such corporations only. It goes without saying that the purpose of this statute was to extend the liability of railroad companies to their servants for the negligence of servants of a higher grade. . . . The statute is inartificially drawn, but its meaning is not doubtful, and its obscurity at once disappears if the clause "or to an employe not appointed or controlled by him" is transposed to its gram-

matical and logical position in the sentence, and placed before the verb. Then the statute would read: "That in every case the liability of the corporation to a servant or employe acting under the orders of his superior, or to an employe not appointed or controlled by him, shall be the same in case of injury sustained by default or wrongful act of his superior as if such servant or employe were a passenger." Now, the conductor whose negligence in leaving the switch open caused the death of the fireman on another train in this case was the superior of that fireman in the employment of the same master. His rank or grade in the service was higher. The fireman, it is true, was not acting under his orders, and was not one of the first class protected by the statute, but he was an employe "not appointed or controlled" by this superior, whose default caused his injury; and he was clearly one of the second class, to whom a right of action for such a default was given by this statute. The effect of the statute is to give a cause of action against the railroad company to every servant who is himself without fault for the default or wrongful act of any superior servant, whether or not the latter appointed or exercised any control over the former before or at the time of the infliction of the injury.'" It is to be observed that this is a decision materially aiding us here. Another decision from Montana, cited by learned counsel for appellant, rendered after this one, was simply a decision construing the common-law principle after the repeal of the statute considered in 17 Mont., 42 Pac., *supra.*

In *Peirce* v. *Van Dusen,* 78 Fed., 693 (24 C. C. A., 280), the court, through Justice Harlan, of the supreme court of the United States, construing the following statute of Ohio: "In all actions against the railroad company for personal injury to, or death resulting from personal injury of, any person, while in the employ of such company, arising from the negligence of such company or any of its officers or employes, it shall be held in addition to the liability now existing by law, that every person in the employ of such company, actually having power or

authority to direct or control any other employe of such company, is not the fellow-servant, but superior of such other employe; also that every person in the employ of such company having charge or control of employes in any separate branch or department shall be held to be the superior, and not the fellow-servant, of employes in any other branch or department who have no power to direct or control in the branch or department in which they are employed"—said: "It is next contended by the plaintiff in error that if Van Dusen was injured by the negligence of Bartley, the conductor, he is not entitled to recover, for the reason that the latter was not negligent in the performance of any duty imposed by law on the master personally, but only in respect of the performance of work pertaining to him and other employes in the same work. The principal authorities cited in support of this view are *Railroad Co.* v. *Keegan,* 160 U. S., 259 (16 Sup. Ct., 269; 40 L. ed., 419), and *Stockmeyer* v. *Reed* (C. C.), 55 Fed., 259. If this contention were sustained, the statute of Ohio would be deprived of all practical value, and the manifest object of the legislature in passing it would be defeated. The Keegan and Stockmeyer cases enforced the general rule that a foreman or superintendent of a body of employes doing a particular service was a fellow-servant of those under him, and consequently the common employer was not liable to one of them for the negligence of the other. The very object of the statute before us was to prevent the application of that rule in Ohio as between a railroad company and its employes. Hence it is declared that every person in the employ of a railroad company, 'having power or authority to direct or control any other employe of such company, is not the fellow-servant, but the superior, of such other employe.' If, by force of the statute, Bartley was not a fellow-servant, but the superior of Van Dusen, he did not become, within the meaning of the statute, a fellow-servant, simply because he did some work of the kind done by Van Dusen. The object of the statute was to make one, to whom is committed by a railroad company the

authority to direct and control employes in the same service, the representative, in respect of that service, of the common employer, so that his acts, within the scope of his employment, are the acts of the company, and his negligence its negligence."

In the case of *C., H. & D. R. Co.* v. *Thiebaud,* 114 Fed., 918 (52 C. C. A., 538), it was held that the provision in the statute of Indiana (Laws 1893, pp. 294, 295, ch. 130) allowing recovery by one employe for injuries sustained through negligence of a co-employe—"The person injured who is obeying or conforming to the order of some superior, at the time of such injury, having authority to direct"—was applicable, though the person injured was not acting at the time under any special direction of a superior, but merely acting in the line of his duty as an employe.

In Utah—Rev. St., 1898, sec. 1342, which, it is to be noted, was passed after the decision in the *Baugh Case,* 149 U. S., 368 (13 Sup. Ct., 914; 37 L. ed., 772), cited by learned counsel for appellant—the statute provides "that all persons engaged in the service of any corporation, who are entrusted by such corporation, as employer, with the authority of superintendence, control, or command of other persons in the employ or service of such employer, or with the authority to direct any other employe in the performance of any duties of such employe, are vice principals of such employer and are not fellow-servants." A fellow-servant was killed by injuries which he received in a collision caused by the negligence of his engineer in running his engine too rapidly in approaching yard limits. The court held that he was entitled to recover, notwithstanding the fact that the negligence was committed while the engineer was discharging the primary duties of the engineer, and not the positive duties of the master. It was held further that the master was liable for the negligence of said superior servant, the engineer, whether the negligence was committed while he (the engineer) was exercising his authority to command or superintend others or not. The statute construed in this case is substantially identical with the

one we are construing in the case before us.  The court, in the course of its opinion, fully recognized the old law of master and servant in its most extreme application, but it correctly held that this statute was a plain departure from the general rule of law; that there was no ambiguity in the terms, no uncertainty in its meaning, and no possible doubt of the meaning of the legislature in its enactment; that it was too positive to be disregarded, and its manifest legal effect could not be ignored; and, further, that to write into the statute that the master would not be liable unless the negligent servant was actually engaged in exercising his authority of superintendence or control would be to so amend it as to deprive it of the greater portion of its effect, in violation of its terms and of the intention of the legislature which its words clearly disclose.  This case is precisely in point, and meets our hearty approval.  It would seem utterly unreasonable to hold that an employe, under our constitution, can only recover where the engineer is attending at the same time to the positive duties of the master, for the obvious reason that the employe could have so recovered under the common-law rule in such case, and it needed no constitutional or statutory provision to give him this remedy.

We have examined with the greatest care all the authorities referred to by the learned counsel for the appellant.  Many of them are decisions under the common law.  In some of the cases statutes like ours were passed and were in force when the decisions were rendered, but the injuries occurred before the adoption of such statutes.  The *Baugh Case,* modifying *C. & M. R. R. Co.* v. *Ross.,* 112 U. S., 377 (5 Sup. Ct., 184; 28 L. ed., 787), by a divided court, did not rest upon the Ohio statute which was construed in *Peirce* v. *Van Dusen, supra,* but rested on common-law principles as construed by that court.

We conclude this opinion with the following observations of the court in the case of *Southern Pac. Co.* v. *Schoer,* 114 Fed., 467 (52 C. C. A., 268; 57 L. R. A., 707).  The court says: "The main complaint of the company is that the court below

charged the jury that, under the statutes of the state of Utah, the engineer of the locomotive on which the deceased was a fireman was the representative of the company, and that his negligence, if any, in following the first section of the train too closely, and in running his engine too rapidly as he approached the yard limits at Terrace at the time of the collision, was the negligence of the company. It is not denied that the engineer in charge of the engine upon which the deceased was employed at the time of his death was entrusted by the company with authority to superintend and direct him in the performance of his duties, but it is contended that this master was not responsible for his negligence, because the negligence which caused the injury was committed while the engineer was discharging the primary duty of a servant, and was not engaged in performing one of the positive duties of the master, and because this negligence was committed while he was not exercising his authority to superintend the action of the fireman, or to direct him in the performance of any of his duties. The argument in support of the first contention is: Under the general law the master was not liable for the negligence of the engineer, because he was discharging one of the primary duties of the servant, and was not performing one of the positive duties of the master, when he committed the fatal act of negligence. The purpose and effect of the sections of the statute of Utah which have been cited were not to change or to extend the liabilities of masters for the negligence of their servants, but their sole object and effect were to give an authoritative legislative definition of the terms 'vice principal' and 'fellow-servant,' and to leave the liabilities of the masters for the acts of their servants as they were before these sections were enacted. Therefore, since the Southern Pacific Company would not have been liable for the negligence of this engineer under the general law, it is not liable for it under this statute. The truth of the major premise of this syllogism is conceded. In the absence of a statute, the liability of a master for the negligence of his servant is a question

of general law, upon which the decisions of the state courts are
not controlling upon the federal judiciary, and, unless the negli-
gent servant is the general manager or general superintendent of
the business of the master, it is not his grade, rank, or authority
over other employes, but it is the nature of the duty he is dis-
charging when he is guilty of the negligence, that determines
whether he is a vice principal or a fellow-servant, and when the
master is liable or exempt from liability for the injury caused
by his carelessness.   If he is discharging one of the absolute
duties of the master, the latter is liable for his acts and for his
negligence.   But if he is discharging one of the primary du-
ties of a servant, his employer is exempt from liability. *Rail-
road Co.* v. *Baugh,* 149 U. S., 368 (13 Sup. Ct., 914; 37 L. ed.,
772); *Railroad Co.* v. *Conroy,* 175 U. S., 323 (20 Sup. Ct., 85;
44 L. ed., 181); *City of Minneapolis* v. *Lundin,* 58 Fed., 525
(7 C. C. A., 344); *Coal Co.* v. *Johnson,* 56 Fed., 810 (6 C. C.
A., 148).   The construction and maintenance of a railroad is
the business of the master.   Its operation is the business of his
servants.   The failure to exercise reasonable care in construc-
tion and maintenance is the negligence of the master.   The
failure to exercise such care in the operation of a railroad is the
negligence of the servant, for which the master is not liable.
The alleged negligence of the engineer of the second section of
this train in running his engine too close to the preceding sec-
tion, and too rapidly as he approached the yard limits at Ter-
race, was negligence in the operation of the railroad, for which
the Southern Pacific Company was not liable, in the absence of
a statute which changed the rules and principles of the general
law.   *Railroad Co.* v. *Needham,* 63 Fed., 107 (11 C. C. A., 56;
25 L. R. A., 833); *Railroad Co.* v. *Mase,* 63 Fed., 114 (11 C.
C. A., 63); *Brady* v. *Railroad Co.,* 114 Fed., 100 (52 C. C. A.,
48; 57 L. R. A., 712).   These principles and authorities amply
sustain the first proposition of counsel for the plaintiff in error.
But the correctness of the second premise of their syllogism is
not so obvious.   A vice principal is the representative of the

master, for whose acts and negligence the master is responsible. *City of Minneapolis* v. *Lundin,* 58 Fed., 525 (7 C. C. A., 344). The rule that the master is liable for the negligence committed by a servant while he is discharging one of the positive duties of the master, and that he is not liable for his negligence when he is performing one of the primary duties of a servant, was not adopted to measure the liability of the master for the acts of a vice principal. It was established to determine who were and who were not vice principals. The master has been invariably held liable by all the courts for the acts and for the negligence of his vice principals. The question upon which they have disagreed—the question which has occasioned debate—has been who were vice principals. Under the general law in the federal courts, and in many of the state courts, that question has been answered by the rule which has already been stated, based upon the nature of the duty the servant was discharging when the negligence was committed. In this condition of the law and of the decisions, the legislature of the state of Utah enacted the statute which has been quoted. It declares that employes who are entrusted by their employers with the authority to superintend other employes of the same master, or with the authority to direct any other employe in the discharge of any of his duties, are vice principals of such employer. This declaration is a plain departure from the general rule of law which we have been considering—an unequivocal declaration that servants who have the authority to direct and superintend other servants are vice principals of their masters, whether they are engaged in discharging the duties of their employers or the duties of their servants. There is no ambiguity in the terms, no uncertainty in the meaning of this statute, and no possible doubt of the purpose of the legislature in enacting it. It is too positive to be disregarded, too plain for construction, and its manifest legal effect cannot be ignored. To sustain the position of counsel for plaintiff in error that this clear and authoritative declaration of the relation of superior servants to their masters in the

state of Utah did not modify or extend the liability of the master beyond that fixed by the general law would be to defeat the manifest object of the legislature in passing this act, and to arbitrarily strike down a law which that body had the undoubted right to enact and to enforce, for the unquestioned rule is that the states have the right to regulate, within reasonable limits, the relation between employers and employes within their borders, and to fix by legislative enactment the liabilities of the former for the acts and negligence of the latter. *Railroad Co.* v. *Baugh,* 149 U. S., 368 (13 Sup. Ct., 914; 37 L. ed., 772); *Railroad Co.* v. *Hogan,* 63 Fed., 102 (11 C. C. A., 51). Our conclusion is that secs. 1342 and 1343 of the revised statutes of Utah of 1898 make all servants employed in the service of a master doing business in that state, who are entrusted by him with authority to command his other servants, or with the authority to direct another of his servants in the discharge of his duties, vice principals of their master, and charge him with liability for their negligence, whether it was committed in the discharge of the positive duties of the master or in the performance of the primary duties of the servant. Another reason why counsel for the plaintiff in error insist that the Southern Pacific Company is not liable for the negligence of this engineer is that, when he committed the acts of negligence charged, he was not engaged in exercising his authority to superintend the fireman, or his power to direct the performance of any of his duties. It is earnestly contended that it is only when the superior servant is guilty while he is actually engaged in exercising his authority of superintendence and control over those subject to his direction that his master is liable for his negligence under the provisions of this statute. In support of this position, *Shaffers* v. *Navigation Co.,* 10 Q. B. Div., 356, 357; *Fitzgerald* v. *Railroad Co.,* 156 Mass., 293 (31 N. E., 7); *Brittain* v. *Railway Co.,* 168 Mass., 10 (46 N. E., 111); and *Dantzler* v. *Iron Co.,* 101 Ala., 309 (14 South., 10; 22 L. R. A., 361), have been cited, and these cases adopt and enforce the rule for which counsel

contend.  But they enforce it because the limitation which counsel seek to read into the statute of Utah was written into these statutes which these decisions were interpreting by the legislative bodies which enacted them.  The employers' liability act of 1880 (43 and 44 Vict., ch. 42), sec. 1, subsec. 2, which the opinion in Shaffer's case was construing, charged the master with liability for injuries caused 'by reason of the negligence of a person in the service of the defendants, who had superintendence entrusted to him, while in the exercise of such superintendence.'  The Alabama and Massachusetts statutes under which the cases from these states arose contain a like limitation. *Dantzler v. Iron Co.,* 101 Ala., 318 (14 South., 10; 22 L. R. A., 361); St. Mass., 1887, p. 900, ch. 270, sec. 1, subd. 2.  The statute of Utah under which the case arose contains no such limitation, and no indication that the legislature intended to adopt any such restriction.  On the other hand, it plainly declares that all persons entrusted by the master with the authority of superintendence of other persons in his employ are vice principals and not fellow-servants.  This is a declaration that they are vice principals not only when they are engaged in performing acts of superintendence and control, but at all times when the authority of superintendence and control is vested in them, and they are engaged in discharging their duties as servants of their master.  This statute is so plain that it cannot be lawfully construed.  To write into it the limitation suggested by counsel, and found in the laws of England, Alabama, and Massachusetts, would be to so amend it as to deprive it of the greater portion of its effect, in violation of its terms and of the intention of the legislature which its words clearly disclose.  It would be judicial legislation, which it is not in the province of the courts to enact."

*It follows from these views that the judgment is affirmed.*